Julius Tantleff et al., Respondents, v Anthony Truscelli et al., Appellants.

Second Department, September 30, 1985

### APPEARANCES OF COUNSEL

*Philip J. Fitzpatrick, P. C.,* for appellants.

*Jacobi, D'Alessandro, Jacobi & Sieghardt, P. C. (Robert N. Glazer* of counsel), for respondents.

### OPINION OF THE COURT

Gibbons, J. P.

The question raised on this appeal is which of two purchase options set forth in a lease is to be given precedence where a tenant seeks to invoke his right to purchase the premises for a fixed price *after* the landlord has given him notice of a bona fide third-party offer in conformity with the tenant's contractual right of first refusal. Under the circumstances of this case, we believe that the right-of-first-refusal option must be given precedence, and that the proper rendition of the aforementioned

notice extinguished the tenant's right to purchase the premises under the fixed price option. We therefore reverse.

On April 6, 1957, a lease covering some 30,000 square feet of vacant land adjacent to New Dorp Lane in Staten Island was executed between the Jules Construction Corporation on one hand, and Lillian Robinson and Mary Truscelli, the titleholders of the property on the other. Subsequent to that time, defendant Anthony Truscelli acquired ownership of the property and thereafter transferred ownership to his 11 children, who, for tax purposes, formed the defendant T-Eleven Partnership to hold title to the land. Sometime after November 2, 1981, the Jules Construction Corporation assigned the lease to its president, plaintiff Julius Tantleff.

With the exception of the two paragraphs containing the purchase options at issue here, the remainder of the lease contains only terms and conditions affecting the leasehold and are not relevant to this appeal. However, the options paragraphs, the priority of which is in issue, provide as follows:[*]

The Right-of-First-Refusal Option

"20th. It is understood and agreed that:

"(a) *In the event that the landlord shall desire to sell the demised premises and the landlord receives an offer from a prospective bona fide purchaser on the landlord's terms, the landlord shall give the tenant an opportunity first to meet such price and terms for which the landlord would be willing to sell to such prospective bona fide purchaser.*

"(b) In the aforesaid event the landlord shall notify the tenant by registered mail that the landlord has a prospective purchaser and shall set forth the price and terms on which the prospective purchaser is willing to purchase and the landlord is willing to sell, and informing the tenant that if the tenant is ready, willing, able and prepared to meet the same terms, that a contract will be prepared in accordance therewith which the tenant shall be ready and prepared to execute at a time and place to be designated by the landlord, said time and place to be designated in said 'notice and information.'

"(c) *Within five (5) days from the date that such aforesaid 'information and notice' is mailed to said tenant, the tenant shall notify the landlord in writing by registered mail that the tenant is ready, willing, able and prepared to purchase the demised premises on the same terms and conditions set forth in the 'notice and*

---

[*] For ease of reference, the ensuing provisions will be referred to hereinafter as the "right-of-first-refusal option" and the "fixed-price option", respectively.

*information*' referred to and that the tenant will appear at the time and place designated in said 'notice and information' to enter into a contract on the said terms referred to in said 'notice and information', and if the tenant shall fail to appear at the time and place therein designated and/or fail to enter into said contract at the time and place designated, on the terms hereinabove referred to, then this provision of this lease pursuant to which the landlord is to give the tenant the opportunity to meet the price and terms of a prospective bona fide purchaser, on the landlord's terms, shall cease and terminate and be and become null and void without any further notice or process" (emphasis added).

### The Fixed-Price Option

"22nd. It is understood and agreed that the tenant herein shall have the *option to purchase the demised premises for* ONE HUNDRED THOUSAND *($100,000)* DOLLARS *cash, at any time while this lease is in force and effect, and provided further that the premises have not prior thereto been sold in accordance with the provisions contained in paragraph numbered '20th (a), (b) and (c)' above,* and *it is not intended that the provisions of this paragraph numbered '22nd' shall survive the termination or cancellation of this lease. If said lease is terminated or cancelled before its expiration date,* by reason of default on the part of the tenant in carrying out its terms or provisions, as hereinabove set forth, or for any other reason, then the provisions of said paragraph numbered '20th (a), (b) and (c) and 22nd' shall also cease and expire at the same time as such termination or cancellation" (emphasis added).

It is undisputed that Jules Construction Corporation validly exercised both of the renewal options available to it under the lease, and that in 1976 the parties executed an agreement granting the lessee the options to extend the lease for three additional 10-year periods upon modified terms of the original lease. At the end of that extension agreement the parties stipulated that "All other terms of [the] lease above referred to [i.e., the lease of April 6, 1957] except as heretofore and herein modified, are to remain in full force and effect".

On December 5, 1981, the defendant owners, pursuant to the "right-of-first-refusal option" provisions of paragraph 20 of the lease, sent a "Notice and Information" to the plaintiffs, informing them of a bona fide offer from defendant Heil to purchase the property for $300,000. Shortly thereafter, the landlord and tenant executed a supplemental agreement extending plaintiffs' time to respond to the December 5th "Notice and Information" to

December 15, 1981, but on December 14, 1981, plaintiff attempted to invoke the "fixed-price option" by sending a letter containing the following notice to the defendant owners.

"Please be advised that Julius Tantleff as assignee of Jules Construction Corp. and Jules Construction Corp., hereby exercises its option to purchase property, Tax Block 3960, Lots 90, 95 and 125, for the amount of $100,000.00, pursuant to the provisions of Paragraph 22 of the lease dated April 6, 1957 between Jules Construction Corp., lessee and Lillian Robinson and Mary Truscelli, lessors.

"Please advise as to the date, time and place for the closing of title."

Significantly, plaintiffs' summons and complaint in this action are also dated December 14, 1981, and were apparently served upon the defendants on or about December 15, 1981, together with an order temporarily restraining the performance of the contract between T-Eleven Partnership and Heil, and ordering them to show cause on December 23, 1981, why a preliminary injunction should not be issued. This preliminary injunction was subsequently granted and extended at plaintiffs' request, and a notice of pendency was filed against the property.

By notice of motion dated April 6, 1983, plaintiffs moved for summary judgment in their favor on the complaint, and for an order directing specific performance of the "fixed-price option". In summary form, it was plaintiffs' contention that they had the right to exercise the "fixed-price option" at any time until the property has actually been sold by the defendants and title transferred. By notice of cross motion dated May 17, 1983, defendants cross-moved for summary judgment in their favor dismissing the complaint on the ground that plaintiffs' receipt of the "Notice and Information", invoking defendants' rights under the "right-of-first-refusal option" terminated any right which plaintiffs may have had to exercise the "fixed-price option" and that plaintiffs' failure to exercise the former option in a timely fashion has terminated their rights thereunder as well.

Special Term found in favor of the plaintiffs on the ground, *inter alia,* that

"The lease provide[d] that [the fixed-price] option would be valid while the lease was in full force and effect, and provided that the property ha[d] not been *'sold'* prior thereto under the first refusal provision. The question is, therefore, was the property sold when a contract of sale was executed between defendants and the bona fide purchaser. The Court holds that it was not. A contract of sale is indicative of an intent to sell. A sale of

property implies the passage of title from seller to buyer. There are any number of reasons why title to real property does not pass even though the parties [may] have contracted to do so. Plaintiffs' option therefore could only be terminated by the passage of title to the property. This is not affected by the fact that plaintiff [*sic*] had notice of an offer to purchase the property by a third party. Plaintiffs chose to exercise their option rather than their right of first refusal. The lease did not make these choices mutually exclusive.

"Plaintiffs' motion for summary judgment is [therefore] granted and defendants' cross motion is denied."

This appeal followed.

We reverse.

Ofttimes, the question of the interpretation of a contract presents a triable issue of fact for the jury to determine, i.e., where the parties rely upon parol evidence to clarify ambiguous terms employed in the agreement and to amplify their intent. Consequently, summary judgment is generally inappropriate where such an issue exists. However, where, as here, the parties rely upon a written agreement, agree that the facts are not in dispute, and do not refer to any parol evidence to shed light upon the meaning of the contract, the interpretation of that written contract presents an issue of law which the court may determine on a motion for summary judgment (*see, Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285).

In the interpretation of leases, the same rules of construction apply as are applicable to contracts generally (*see, Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211). Thus, the intent of the parties is to be given paramount consideration (*see, Schmidt v Magnetic Head Corp.*, 97 AD2d 151, 156). Nonetheless, where the intent of the parties is to be gleaned from the agreement alone, the court will concern itself with the parties' intent only insofar as the latter may be discerned from the four corners of the document (*see, West, Weir & Bartel v Carter Paint Co.*, 25 NY2d 535, 542; *Tougher Heating & Plumbing Co. v State of New York*, 73 AD2d 732). The court may not rewrite the contract for the parties under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning (*cf. Sutton v East Riv. Sav. Bank*, 55 NY2d 550; *Schmidt v Magnetic Head Corp., supra*). In short, the proper aim of the court is to arrive at a construction which will give fair meaning to *all* of the language employed by the parties, and to reach a "practical interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable

expectations' " (*Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397, 400, quoting from 1 Corbin, Contracts § 1; *see, Sutton v East Riv. Sav. Bank, supra; see also, Tougher Heating & Plumbing Co. v State of New York, supra*).

Applying the foregoing principles to the case at bar, it is clear that the principal purpose of the document in question was the creation of a leasehold interest, and that it was not intended primarily to effectuate the eventual sale of the realty. Thus, all but two of the contract's 25 numbered paragraphs concern the terms and conditions attendant to the creation of a landlord-tenant relationship, and nowhere in the parties' 1976 extension agreement is there any reference whatsoever to the sale of the property. Consequently, there is no indication that the defendant owners were either so intent on effectuating a sale of the realty, or so desperate to procure a tenant that they would agree to permit the latter to purchase the property for the fixed (1957) price of $100,000, notwithstanding the existence of a higher, preexisting offer from a bona fide purchaser. Nevertheless, this would be the practical effect of construing the purchase option provisions in the manner adopted by Special Term. Clearly, a more reasonable interpretation of these provisions would be that the tenant may freely exercise the "fixed-price option" at any time before the landlord has received a bona fide offer which he wishes to accept and has given the tenant proper notice thereof in accordance with paragraph 22 of the lease, i.e., the tenant's "right-of-first-refusal option". Indeed, the unambiguous language of paragraph 20 (a) expressly provides that: "(a) In the event that the landlord shall desire to sell the demised premises, and the landlord receives an offer from a prospective bona fide purchaser on the landlord's terms, the landlord shall give the tenant an opportunity first to meet such price and terms for which the landlord would be willing to sell to such prospective bona fide purchaser". In the context of this lease, it simply makes no sense to interpret its provisions in such a manner as to provide the plaintiffs with the right to co-opt a bona fide offer to purchase the property for more than $100,000 by invoking the "fixed-price option" when notified of the right of first refusal, and conceivably reselling the property to the landlord's prospective buyer at the augmented price. In addition, while defendants' construction of the agreement would permit both options to operate freely in the alternative, the construction adopted by Special Term would deprive the provision according a right of first refusal of all utility where a third-party offer exceeds $100,000, and effectively limit the sales price of the property to that amount. It is a cardinal rule of construction that a contract

should not be interpreted in such a way as would leave one of its provisions substantially without force or effect (*see, Corhill Corp. v S. D. Plants, Inc.,* 9 NY2d 595, 599; *Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42, 46).

In sum, Special Term's decision places undue emphasis upon the isolated use of the word "sold" in paragraph 22 of the lease to terminate plaintiffs' "fixed-price option", thereby disregarding the import of the remainder of the contract's provisions. Such an interpretation in effect allows "form" to swallow "content" (*cf. Sutton v East Riv. Sav. Bank,* 55 NY2d 550, *supra*), without regard to the manner in which the words are used, the nature of the relationship between the parties, and the circumstances of the contract and its execution (*see, e.g., Bray Terms. v Grand Union Co.,* 74 AD2d 965, 966). In this respect, we find particularly persuasive the observations of the Indiana Court of Appeals in *Tarrant v Self* (180 Ind App 215, 222, 387 NE2d 1349, 1353): "Where both a fixed-price purchase option and an option giving the lessee the right of first refusal are contained in a lease the parties must specifically designate which one takes precedence over the other. Where, as here, the lease does not prescribe which provision takes precedence over the other, if, before the lessee exercises his option to purchase at a fixed amount or before such option comes into existence, whichever is later, the lessor properly notifies the lessee of a bona fide offer to purchase the leased premises, and the lessee refuses to exercise his option to purchase the property under the terms of such offer, then the lessee forfeits his right to purchase under the fixed-price option. See *Shell Oil Co., Inc. v. Blumberg* (5th Cir. 1946) 154 F.2d 251; *Adams v. Helburn* (1923) 198 Ky. 546, 249 S.W. 543; *Northwest Racing Ass'n v. Hunt* (1959) 20 Ill. App.2d 393, 156 N.E.2d 285; *Shell Oil Co. v. Jolley* (1972) 130 Vt. 482, 296 A.2d 236; and *Annotation,* 8 A.L.R.2d 604" (*see, Amoco Oil Co. v Kraft,* 89 Mich App 270, 280 NW2d 505; *Bobali Corp. v Tampa Co.,* 235 Pa Super Ct 1, 340 A2d 485; *cf. Sargent v Vought,* 194 App Div 807).

Accordingly, the order and judgment appealed from should be reversed, plaintiffs' motion for summary judgment denied, defendants' cross motion for summary judgment granted, and the complaint dismissed.

BROWN, WEINSTEIN and NIEHOFF, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Richmond County, dated August 4, 1983, reversed, with costs, plaintiffs' motion for summary judgment denied, defendants' cross motion for summary judgment granted and complaint dis-

missed. The County Clerk of the County of Richmond is directed to cancel of record the notice of pendency dated December 14, 1981, and filed in his office, affecting Block 3960, Lots 90, 95 and 125 as presently shown on the tax map of the City of New York for the Borough of Staten Island.