OPINION OF THE COURT
Edward H. Lehner, J.
The principal issue raised on this motion for summary judgment is whether a lease, the term of which does not commence until 42 months after the demised property is rezoned to permit the intended use, may be canceled by the lessor when after almost two decades subsequent to the execution thereof the zoning has not been changed, and two thirds of the property has been mapped as tidal wetlands by the State of New York.
FACTS
By instrument dated October 16, 1968, defendant City of New York (City) leased unto plaintiff Omath Holding Company, Inc. (Omath) a parcel of vacant land located in the Mill Basin section of Brooklyn consisting of 66 acres of upland property and 11 acres under water. The lease was for a period of 20 years commencing on either:
i) the date work on the premises was substantially completed,
ii) the date Omath commenced business at the demised premises, or
iii) 42 months from the date of execution of the lease, whichever first occurs, with Omath having the right to renew for three additional 10-year terms. Omath was to build, maintain and operate a marina, boatel, restaurant, recreation area and shopping center.
In paragraph seventh of the lease, Omath acknowledged that the property was not zoned in a manner that would permit the contemplated improvements, and it agreed "to apply promptly to the proper agency for the rezoning of the demised premises”. The 42-month period referred to above relating to the commencement of the term was not to run until "such rezoning is finally accomplished”, and no construction was to be commenced "until the date of such rezoning”, nor was any rent owing until such date.
Inexplicably, no provision was made to deal with the contingency that the request for a zoning change would be denied, other than a clause that the City would not be responsible for any damages in "the event the rezoning is not accomplished.”
*273 Omath promptly applied to have the property rezoned. A public hearing on the proposed amendment to the zoning resolution was held and, in a report dated September 23, 1970, the City Planning Commission (CPC) disapproved the amendment, and apparently has never since altered its position. There is nothing in any of the papers that even suggests that the CPC is now contemplating any change on this issue. The City has submitted proof showing that Omath was aware prior to execution of the lease that there was a serious question whether the CPC would approve the change. No claim is made that the CPC, a City agency, acted other than in good faith in denying the zoning change.
In 1977, the New York State Department of Environmental Conservation mapped two thirds of the property as tidal wetlands under article 25 of the Environmental Conservation Law, which designation prevents almost all commercial development on such mapped area.
In a letter dated June 10, 1986, the City notified Omath that due to the CPC’s denial of the zoning change, and the 1977 action by the State, "the Lease is null and void.” Omath was asked to formally quiet title so that the City could offer a parcel of 14 acres, consisting of a portion of the demised premises for development through a request for proposals.
Omath responded by commencing this action seeking a declaratory judgment that the lease is valid and binding on the City, and an injunction restraining the City from offering the premises to third parties.
The City counterclaimed for a judgment declaring that Omath and third-party defendants to whom Omath issued subleases are barred from claiming an estate in the property, and that thé City is vested with an absolute title to the premises, and entitled to possession thereof.
Omath has never paid any rent or other compensation to the City under the lease, nor performed any construction on the site. It argues that its principals, Lawrence Tisch and Charles Beneson, "are gentlemen of vast experience with regard to New York City real estate and development”, and that thus Omath is "fully capable of developing the Mill Basin property.” However, plaintiff offers no suggestion as to how the property could be developed for the contemplated use in light of the CPC position on the zoning.
CONTENTIONS OF THE PARTIES
The City contends that the lease did not vest upon execu *274 tion, and because it was uncertain when the lease would vest, if ever, it is invalid under the Rule against Perpetuities (the Rule). In addition, it is argued that the lease is void even under common-law contract principles because performance thereunder was conditioned upon having the property rezoned (an event which did not occur), and because the State classified a large part of the property as tidal wetlands both rendering performance under the lease impossible.
In opposition, Omath maintains that the Rule does not void the lease, and that a "reasonable time” standard should be implied, and that here, without discovery and before a trial, it "cannot be said as a matter of law that a 'reasonable time’ with regard to the Mill Basin project has come and gone.” Further, it is asserted that the doctrine of impossibility is inapplicable because the possibility of a denial of the needed zoning change was within the contemplation of the parties at the time of execution.
DISCUSSION
To determine the rights of the parties it is necessary to start with an examination of the esoteric learning of the Rule against Perpetuities. The Rule, which had its origin as a land reform in the seventeenth century "evolved to prevent real property from being fettered with future interests so remote that the alienability of the land and its marketability would be impaired, preventing its full utilization for the benefit of society at large as well as of its current owners.” (Anderson v 50 E. 72nd St. Condominium, 119 AD2d 73, 76 [1st Dept 1986], appeal dismissed 69 NY2d 743.)
The Rule is now codified as EPTL 9-1.1, and reads as follows:
"(a) (1) The absolute power of alienation is suspended when there are no persons in being by whom an absolute fee or estate in possession can be conveyed or transferred.
"(2) Every present or future estate shall be void in its creation which shall suspend the absolute power of alienation by any limitation or condition for a longer period than lives in being at the creation of the estate and a term of not more than twenty-one years. Lives in being shall include a child conceived before the creation of the estate but born thereafter * * *
"(b) No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more *275 lives in being at the creation of the estate and any period of gestation involved.”
Prior to 1965 the New York statute relating to remoteness of vesting was narrow and applied only to certain types of interests. With the 1965 amendment, which added paragraph (2) to the section, the New York statute was brought into harmony with the common law.
In addition to the statutory provisions on remoteness of vesting and the suspension of the absolute power of alienation, an owner’s ability to dispose of property is also limited by the common-law prohibition against the creation of unreasonable restraints on alienation. (See, Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 161 [1986].)
In New York an option to acquire realty creating an interest which may vest beyond the permissible period is subject to the Rule. (Buffalo Seminary v McCarthy, 86 AD2d 435 [4th Dept 1982], affd 58 NY2d 867 [1983].) However, the Rule has been held inapplicable to preemptive rights in commercial and governmental transactions where a party has the right to buy, if the owner chooses to sell, at a price at which a third person would pay. Such a preemptive right may nevertheless be declared invalid if it imposes an unreasonable restraint on alienation. (Metropolitan Transp. Auth. v Bruken Realty Corp., supra.)
Since a leasehold interest is an "estate in property”, it is subject to the Rule. Although one Federal court avoided its application by finding under Virginia law that "an interest in property is vested when there exists a present right to possession at either a present or future time” (Isen v Giant Food, 295 F2d 136 [DC Cir 1961]), no New York case has been found dealing with the application of the Rule to leases, and the court finds plaintiffs argument that the lease at bar vested at execution to be strained.
The City points to the decision of a California intermediate appellate court in Haggerty v City of Oakland (161 Cal App 2d 407, 326 P2d 957 [1958]) to sustain its position that the lease at bar is void for remoteness of vesting. There the lease provided that the term would commence 10 years from the completion of construction of the contemplated building. The court ruled that since it was not certain that the construction would be completed within the permissible period, the Rule had been violated.
In his article, Perpetuities, New Absurdity, Judicial and *276 Statutory Correctives (73 Harv L Rev 1318, 1319), Professor Leach calls this result "absurd”, stating that the nature of the transaction being "to develop the property immediately for its most effective use” does not violate the policy of the Rule. The author suggests that "[i]n each case not controlled by all-fours precedent the issue should be whether the transaction violates the policy of the Rule” (id., at 1320).
Although the Haggerty case (supra) was never appealed, its conclusion was disapproved five years later by the California Supreme Court in Wong v Di Grazia (60 Cal 2d 525, 35 Cal Rptr 241, 386 P2d 817 [1963]), which also involved a lease the term of which was to commence on the completion of a building. There the court rejected the argument that the lease vested upon execution, ruling that vesting occurred only upon completion of construction. However, the court saved the lease from the application of the Rule by implying a condition that construction had to be completed within a reasonable period (which would be far less than 21 years after execution), and that failure to complete construction within that period would permit a termination of the lease. Hence, with such implied provision, the lease would vest or fail to vest within the permissible period under the Rule. This approach, which has been followed by other courts in handling leasehold transactions challenged as violating the Rule (e.g., Singer Co. v Makad, Inc., 213 Kan 725, 518 P2d 493 [1974]; Matter of Wonderfair Stores, 511 F2d 1206 [9th Cir 1975]; Isen v Giant Food, supra), certainly seems the preferable manner of resolving such controversies.
Coming to the instrument at bar, by strictly applying subdivision (b) of EPTL 9-1.1 the lease should be declared void ab initio as at the time of execution in 1968 it was possible that the contemplated rezoning would not occur within 21 years. In New York it is a well-established principle that in applying the Rule a court is required to examine what might happen, and not what actually happened. (Matter of Fischer, 307 NY 149 [1954]; Matter of Roe, 281 NY 541 [1939]; Matter of Isganaitis, 124 Misc 2d 1 [Sur Ct, Kings County 1983].)
Thus, if the Rule in New York were to be applied in the same manner as in the Haggerty case (supra), as is urged by the City, it would mean that even if the rezoning had in fact been granted shortly after execution, the lease would never *277 theless be declared void if challenged because of the possibility of remoteness of vesting. A similar fate would await leases containing the common provision that the term is to commence upon completion of construction.
Since such application would invalidate agreements that promote the development of property and would thus be inconsistent with the policy behind the Rule, this court declines to so apply the Rule. Instead, there will be implied from other provisions of the lease (e.g., that Omath "promptly” apply for rezoning) a requirement that the rezoning be accomplished within a reasonable period. To imply such term would not violate the New York principle that in applying the Rule a court may not adopt a "wait and see” approach.
In Isen v Giant Food (295 F2d 136, supra), the lease was not to commence until rezoning of the property for commercial use. In upholding the validity of the lease, the court ruled that because it required the parties to "diligently pursue” a zoning change, the agreement would be interpreted to require "that zoning for commercial purposes, if obtained at all, must be obtained within a reasonable time”, and concluded "that such time, in the circumstances of this case, is certainly within the period of perpetuities.” (295 F2d, at 137-138.)
Although Omath urges the adoption of a "reasonable period” concept, it maintains that a trial is necessary to determine whether such period has expired. The court disagrees. Under the terms of this lease, the reasonable period within which Omath had to obtain the zoning change was, as a matter of law, far less than 21 years, and hence within the permissible period of the Rule. Notwithstanding the lack of an explanation by the City as to why it delayed so long in seeking a termination of the lease, in light of the failure of plaintiff to obtain the required rezoning within such reasonable period, the court finds that the City was within its rights in terminating the lease. A contrary determination could result in the property remaining unproductive and undeveloped indefinitely.
CONCLUSION
In view of the foregoing, the City’s motion for summary judgment is granted dismissing the complaint, and granting it *278 judgment declaring that: (i) the lease with Omath has been validly terminated; (ii) Omath and its sublessees are barred from claiming an estate or interest in the property; and (iii) the City is entitled to sole and complete possession thereof. Since the City failed to demonstrate the right to the monetary relief sought in the counterclaims, such claims are dismissed.