■ TEXACO REFINING AND MARKETING, INC., Respondent, v ELAINE V. FISCHER, Appellant.—In an action for specific performance of an option to purchase certain real property, the defendant appeals (1) from an order of the Supreme Court, Nassau County (Robbins, J.), dated October 3, 1989, which, *inter alia,* granted the plaintiff's motion for summary judgment, and (2) from a judgment of the same court, entered November 8, 1989, which directed the defendant to specifically perform her obligations pursuant to the option agreement.

Ordered that the appeal from the order is dismissed, and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on appeal from the judgment *(see,* CPLR 5501 [a] [5]).

In 1964, Land and Petroleum Corp., a New York corporation, entered into a lease with Texaco, Inc. The lease related to certain property located on Hempstead Turnpike in East Meadow, New York. The plaintiff Texaco Refining and Marketing, Inc. (hereinafter TRMI), a Delaware corporation, is the assignee of the leasehold interest which originally belonged to Texaco, Inc.; defendant Elaine Van Arnam Fischer is the conservator of the property of John C. Fischer, to whom title to the subject premises was conveyed in 1968.

According to paragraph 10 (a) of the subject lease, the plaintiff TRMI's predecessor in interest was granted an option to purchase the subject property for the sum of $175,000. This option could be exercised "any time after the 5th year of [the] lease or any extension or renewal thereof". This is referred to as the "fixed-price option".

According to paragraph 10 (b) of the lease, the plaintiff's predecessor in interest was also granted an option to purchase the property "on the same terms * * * as [those reflected in] any bona fide offer for said premises received by lessor and which offer lessor desires to accept". This option could be exercised "at any time during the initial term or any extended term of [the] lease." This is referred to as the plaintiffs' "right of first refusal".

In 1968, the parties' respective predecessors in interest modified the terms of the fixed-price option so as to provide that it could be exercised only "after the 15th year of [the] lease or any extension or renewal thereof". The terms of the right of first refusal were not altered.

In both the original lease and the 1968 modification agreement, the parties' respective predecessors in interest included the following clause, which refers to the fixed-price option (paragraph 10 [a]) and to the right of first refusal (paragraph 10 [b]): "Each such option herein granted shall be independent of the other, shall be pre-emptive and continuing, and shall be binding upon lessor, lessor's heirs, devisees, legal representatives, successors and assigns. The election by lessee not to purchase said premises in the case of any bona fide offer referred to in (b) above shall not terminate or in any wise affect either of such options but each shall thereafter continued unaffected as set forth in this paragraph."

In July 1987 TRMI was advised by an attorney for the defendant's conservator that an offer to purchase the subject property for $675,000 had been received. TRMI declined to exercise its right of first refusal, but, by way of a letter dated September 4, 1987, did exercise the price-fixed option. The present action for specific performance was commenced after it became apparent that the defendant was unwilling to comply with the terms of the fixed-price option. The defendant appeals from the judgment granted in favor of TRMI.

The defendant cites *Tantleff v Truscelli* (69 NY2d 769, *affg* 110 AD2d 240) and *Moon v Haeussler* (153 AD2d 1002) for the proposition that her conservatee's receipt of a bona fide third party offer to purchase the property in question automatically

extinguished the plaintiff's right to exercise the fixed-price option. Acceptance of this proposition would, however, nullify that portion of the agreement which explicitly stated that the fixed-price option would "not terminate" and would "continue * * * unaffected" by the plaintiff's election not to exercise the right of first refusal. We do not regard either the *Tantleff* or the *Moon* cases as having sanctioned such a clear departure from the terms of an unambiguous contract. It is clear that the lease under review in the *Tantleff* case did not expressly address the relationship between the two types of option *(see, Tantleff v Truscelli,* 110 AD2d 240, 246, *supra).* Further, it is not clear whether the lease under review in the *Moon* case contained a provision similar to that quoted above. Therefore, these cases are not binding on our determination in the instant case.

We do not agree with the defendant's argument that if, considered enforceable indefinitely, the fixed-price option renders nugatory the right of first refusal. The price which a bona fide third party would be willing to pay for the property may, in general, be considered as a reflection of the property's fair market value. In order to obtain such a bona fide offer, the landowner need only advertise the availability of his property for sale. By expressly stipulating that the lessee's right to purchase the property for $175,000 would survive any third party offer, the parties and their predecessors in interest essentially agreed that the plaintiff would have the right to purchase the property for $175,000, or for fair market value, whichever is *less.* By arguing that the receipt of a bona fide purchase offer automatically extinguishes the fixed price option, the plaintiff would have us revise the agreement so as to confer upon the plaintiff the much less valuable right to purchase the property for $175,000, or for fair market value, whichever is *more.* This would obviously constitute a major revision of the agreement, and would be one which the courts should not countenance *(see, Gulf Oil Corp. v Chiodo,* 804 F2d 284; *Shell Oil Co. v Prescott,* 398 F2d 592, *cert denied* 393 US 1017; *Powertest Corp. v Evans,* 665 F Supp 134; *see also, Amoco Oil Co. v Snyder,* 505 Pa 214, 478 A2d 795; *Texaco, Inc. v Creel,* 310 NC 695, 314 SE2d 506; *Crowley v Texaco,* 306 NW2d 871 [SD]; *Conroy v Amoco Oil Co.,* 374 So 2d 561 [Fla]).

We have examined the appellant's remaining contentions, and find them to be without merit. Mangano, P. J., Bracken, Kunzeman and Kooper, JJ., concur.