■ Shifra Tikotzky et al., Respondents, v City of New York, Respondent, and New York City Transit Authority, Appellant. [729 NYS2d 525] —In an action to recover damages for personal injuries, etc., the defendant New York City Transit Authority appeals from so much of an order of the Supreme Court, Kings County (Bruno, J.), dated March 14, 2000, as denied its motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against it.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.

This action involves a one-car motor vehicle accident which occurred on May 16, 1998, on McDonald Avenue in Brooklyn, approximately 70 to 80 feet north of the intersection with Avenue M. The plaintiff Wolf Tikotzky and several members of his family were riding in a car traveling on McDonald Avenue when the wheels of the vehicle struck exposed metal trolley tracks. The tires of the car lost traction and the car slid into a concrete and steel support pillar for the elevated subway tracks. The plaintiffs commenced this action against the City of New York and the New York City Transit Authority (hereinafter the TA), alleging, in part, that the TA was responsible for maintaining the tracks present in the roadbed of McDonald Avenue, and that its negligence in maintaining them was the cause of the accident. The TA moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against it, arguing that it did not own, operate, or maintain the subject tracks. The TA argued that the tracks had been owned, operated, and maintained by an entirely sep-

arate corporate entity, the South Brooklyn Railway Co. (hereinafter SBR). The Supreme Court denied the motion finding, in essence, that the documentary evidence showed that the TA had assumed responsibility for the tracks.

Prior to 1940 the subject tracks were owned and operated by SBR. In June 1940 the City agreed to unify transit operations under the City Board of Transportation, purchasing various rail lines, including the Brooklyn Manhattan Transit Co. of which SBR was a subsidiary. Thirteen years later, in June 1953, the TA was created as a public benefit corporation to which the City leased transit facilities.

"It is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations" (*Weisberger v Goldstein,* 242 AD2d 622, 623; *see, Slamow v Del Col,* 174 AD2d 725, *affd* 79 NY2d 1016; *see also, W.W.W. Assocs. v Giancontieri,* 77 NY2d 157, 162-163; *Mazzola v County of Suffolk,* 143 AD2d 734, 735). A court may not write into a contract conditions the parties did not include by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning (*see, Slamow v Del Col, supra,* at 727; *Tantleff v Truscelli,* 110 AD2d 240, 244, *affd* 69 NY2d 769). The words and the phrases used in an agreement must be given their plain meaning so as to define the rights of the parties (*see, Laba v Carey,* 29 NY2d 302, 308; *Levine v Shell Oil Co.,* 28 NY2d 205, 212-213).

The 1940 agreement unifying the transit system provided that SBR would continue as a corporate entity. The 1940 agreement states that although the City would take a controlling interest in SBR through the ownership of SBR stock, SBR's "corporate identity [would] continue." However, the continued corporate existence of SBR has no bearing on who was responsible for the subject tracks. It is clear from the 1940 agreement that although the SBR would maintain a separate corporate existence, the City Board of Transportation assumed "control [of] the management and operation of its business and properties." Moreover, contrary to the TA's assertions, a reading of the 1940 agreement in conjunction with the 1953 lease agreement between the City and the newly-created TA makes it clear that the maintenance of the tracks had become the TA's responsibility. Therefore, the documentary evidence shows that the TA was ultimately responsible for the tracks.

The TA's remaining contention is without merit. Bracken, P. J., Friedmann, Florio and Feuerstein, JJ., concur.