Matter of Joachim v Flanzig (2003 NY Slip Op 51467(U))

[*1]

Matter of Joachim v Flanzig

2003 NY Slip Op 51467(U)

Decided on November 6, 2003

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 17, 2015; it will not be published in the printed Official Reports.

Decided on November 6, 2003

Supreme Court, Nassau County
In the Matter of EDWARD B. JOACHIM and STEPHEN G. FROMMER, as partners in the law firm of JOACHIM, FLANZIG, FROMMER, FLANZIG & CERRATO, ESQS., and Individually, Plaintiffs, - -
against
SHELDON FLANZIG, DANIEL FLANZIG, CATHY FLANZIG, and FLANZIG & FLANZIG LLP., Defendants.
INDEX NO. 3215-02

COUNSEL FOR PLAINTIFF
Joachim, Frommer, Cerrato & Levine, LLP
1225 Franklin Avenue - Suite 245
P.O. Box 7547
Garden City, New York 11530
COUNSEL FOR DEFENDANT
David Bolton, P.C.
666 Old Country Road - Suite 509
Garden City, New York 11530

LEONARD B. AUSTIN, J.
ORDER
The following papers were read on Edward Joachim's motion to interpret the February __, 2003 Agreement:
Letter of Stephen G. Frommer, Esq. dated October 2, 2003; and
Letter of David Bolton, Esq. dated October 10, 2003.
BACKGROUND
This proceeding arises from the dissolution of a law firm in which Edward
Joachim ("Joachim") and Sheldon Flanzig ("Flanzig") were partners Joachim & Flanzig ("Partnership" or "J & F"). The Partnership primarily represented Plaintiffs' in personal injury actions. Almost all of the Partnership's clients had retained the Partnership pursuant to the terms of contingent fee retainers. Thus, J & F's income was derived almost exclusively from the proceeds to which it was entitled to receive pursuant to the terms of the retainers from the settlements or judgments it obtained on behalf of its clients.
By agreement of the parties, May 10, 2002 was established as the date of the dissolution of the Partnership.
Two firms arose from the dissolved partnership; to wit: Joachim, Frommer, Cerrato & Levine, LLP and Flanzig and Flanzig, LLP (collectively "Successor Firms"). These new firms [*2]adopted a procedure for notifying the J & F clients so as to enable them to choose which successor firm would represent them thereafter.
By Stipulation and Order dated February __, 2003, the Successor Firms agreed to a formula for allocating the legal fees earned on cases in which J & F had been the attorney of record prior to May 10, 2002. The J & F cases were divided into four categories:
(1) Case in which a Note of Issue had been filed prior to May 10, 2002;
(2) Cases in which a Note of Issue had not been filed prior to May 10, 2002;
(3) Cases involving uninsured or underinsured motorist arbitrations; and
(4) Cases which had been resolved by settlement or judgment prior to May 10, 2002 for which the settlement funds or judgment proceeds had not yet been received or distributed.
After reimbursement for disbursements, payment to the client of the client's share and payment of co-counsel fees, if any, the successor firm which worked on and maintained the file after the agreed dissolution date received a percentage of the net earned legal fee and the balance was to be paid to the Partnership. In all cases, except for cases in Category 1, the Partnership's share of the fee was to be divided with 45% being paid to Joachim, 45% being paid to Flanzig and 10% being deposited into an escrow account.
The Stipulation established two methods for paying out legal fees for Category 1 cases. The Successor Firm representing the client at the time the action was resolved would prepare a Closing Statement and provide it to the other Successor Firm. The firm receiving the Closing Statement would then have 30 days to object to the proposed distribution. If an objection was not received, the funds would be distributed as follows:
a. reimbursement of disbursements incurred by the Partnership to be distributed as follows: 45% to Joachim, 45% to Flanzig and 10% in escrow;
b. reimbursement of disbursements incurred by the Successor Firm which represented the client when the action when the action was resolved;
c. client's share;
d. co-counsel fee;
e. the legal fee would be paid as follows: 50% to the firm which represented the client when the action was resolved and 50% to the Partnership. The Partnership share was to be divided: 45% to Joachim, 45% to Flanzig and 10% into escrow.
If timely objection to the proposed distribution was received, the funds would be distributed as follows:
a. Reimbursement of disbursements incurred by the Partnership to be distributed as follows: 45% to Joachim, 45% to Flanzig and 10% in escrow;
b. reimbursement of disbursements to the Successor Firm the represented the client when the action resolved;
c. client's share;
d. co-counsel fee;
e. legal fee to paid out as follows: 40% to the Successor Firm that represented the client [*3]when the action was resolved; 20% to Edward Joachim; 20% to Sheldon Flanzig and 20% in escrow.
A hearing would then be held before a Special Referee to determine the objections so that the remained of the legal fee and adjustments to disbursements could be made.
The escrow is being held pending determination of a claim by Steven Frommer that he was a 10% partner in Joachim & Flanzig. The February, 2003 Stipulation does
not provide a method for the distribution of the escrow if it is ultimately determined that Steven Frommer was not a 10% partner in the Partnership.
Distributions pursuant to the February, 2003 Stipulation have been made. However, Joachim has recently refused to make any distribution to Flanzig pursuant to the terms of the Stipulation. Joachim asserts that, as of December 31, 2001, the balance in his capital account exceeded the balance in Flanzig's capital account by approximately $130,000.00. Joachim asserts that he is not required to distribute any money to Flanzig pursuant to the terms of the Stipulation until the difference in the capital accounts has been equalized.
Joachim asserts that, pursuant to Partnership Law §71(b), he is entitled to receive this amount before any distributions are made to Flanzig pursuant to the terms of the February, 2003 Stipulation.
The primary asset of the Partnership was its cases. The remaining assets, consisting of furniture, law library and equipment, was of little monetary value and has been satisfactorily divided between the Successor Firms. The debts of the Partnership owed to third-parties was not substantial. These sums have been paid either by the Partnership or the Successor Firms and are now subject to an accounting pending before Special Referee Frank Schellace.
DISCUSSION
 A Stipulation is a contract which will be enforced in accordance with its terms.
McKenzie v. Vintage Hallmark, PLC, 302 A.D.2d 503 (2nd Dept., 2003); and Charter Realty & Development Corp. v. New Roc Assocs., L.P., 293 A.D.2d 438 (2nd Dept., 2002).
An agreement that is clear and unequivocal shall be enforced in accordance with
its terms. The interpretation of a clear and unequivocal contract is a matter of law for the Court. Greenfield v. Philles Records, Inc., 98 N.Y.2d 562 (2002); and Russack v. Weinstein, 291 A.D.2d 439 (2nd Dept., 2002).
The Court is to determine the intent of the parties from the language of the agreements. Greenfield v. Philles Records, Inc., supra; W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157 (1990); and Katina, Inc. v. Famiglietti, 306 A.D.2d 440 (2nd Dept., 2003). The terms of the contract are to be interpreted in accordance with their plain meaning. Greenfield v. Philles Records, Inc., supra; and Tikotzky v. New York City Transit Auth., 286 A.D.2d 493 (2nd Dept., 2001). The Court is to give "...practical interpretation to the language employed and the parties' reasonable expectations." Del Vecchio v. Cohen, 288 A.D.2d 426, 427 (2nd Dept., 2001), quoting, Slamow v. Del Col, 174 A.D.2d 725 (2nd Dept., 1991), aff'd, 79 N.Y.2d 1016 (1992). See also, AFBT-II, LLC v. Country Village on Mooney Pond, Inc., 305 A.D.2d 340 (2nd Dept., 2003).
The Court may not add or delete provisions of an agreement under the guise of [*4]interpretation nor may the Court interpret the language in such a way as would be contrary to the intent of the parties. Petracca v. Petracca, 302 A.D.2d 576 (2nd Dept.
2003); and Tikotzky v. New York City Transit Auth., supra.
Partnership Law §71 establishes the assets and liabilities of a partnership that is being dissolved. Partnership Law §71(b) provides for the priority of payment of partnership liabilities. However, the provisions of Partnership Law §71 do not apply if the partners have entered into a written agreement to the contrary. See, Livack v. Central General Hospital, 242 A.D.2d 684 (2nd Dept., 1997).
In this case, there is an agreement to the contrary. The February, 2003 Stipulation and Order defines partnership assets and further provides a specific method for their distribution which is contrary to and supercedes the provisions of Partnership Law §71(b). Under such circumstances, the provisions of the stipulated agreement must prevail.
The Stipulation does not provide for the payment to Joachim of the difference in the partnership's capital account. Nor does it make payment of the partnership share of the judgment or settlement proceeds when received contingent upon such payment. The percentage of the amounts that the Successor Firms are required to pay to the Partnership is clearly established by the Stipulation as is the distribution of the Partnership funds. The Stipulation does not make any provision for payment to Joachim on account of his capital account.
Joachim was, or should have been, aware of the discrepancy of the amounts in the respective capital accounts prior to entry into Stipulation. The equalization of that
account could have been provided for in the Stipulation but was not. The Stipulation is clear and unambiguous and provides a specific method for the distribution of the legal fees attributable to the Partnership. Permitting Joachim to withhold funds properly due to Flanzig pursuant to the terms of the Stipulation until the balance in the capital accounts has been equalized would constitute an improper modification of the Stipulation in the guise of interpretation. See, Petracca v. Petracca, supra. This would be contrary to express terms of the Stipulation.
Joachim's argument that this is an issue to be decided by the Special Referee assigned to oversee this matter is without merit. Paragraph 15 of the Stipulation refers to the Special Referee certain specific issues. The issue raised in this application is not within that class of referred issues. Paragraph 11 provides that all issues regarding the accounting and distribution of the settlement and judgment funds shall be heard by the Special Referee. However, the issue raised here is does not relate to the accounting or the distribution of funds. The issue before the Court is an issue relating to the interpretation of the Stipulation. Thus, it is an issue of law for the Court.
 The Stipulation does not provide for the distribution of the 10% being paid into escrow to abide the claim of Stephen Frommer. Therefore, if the Court determines that Mr. Frommer was not a 10% partner in the Partnership, that fund should be distributed in accordance with Partnership Law § 71(b).
[*5]
Joachim is directed to forthwith pay over to Flanzig his share of the Partnership fees received by Joachim, Frommer, Cerrato & Levine, LLP in accordance with the terms of the Stipulation.
Accordingly, it is,
ORDERED, that Plaintiff Edward Joachim shall pay over to Defendant Sheldon Flanzig his share of the legal fees received by Joachim, Frommer, Cerrato & Levine, LLP in accordance with the terms of the February, 2003 Stipulation.
This constitutes the decision and order of the Court.
Dated: Mineola, NY _____________________________
 November 6, 2003 Hon. LEONARD B. AUSTIN, J.S.C.
Decision Date: November 06, 2003