Carvel Corporation, Respondent, v Harvey Rait, Appellant.

Second Department, June 9, 1986

APPEARANCES OF COUNSEL

*Nathanson & Devack (Mitchell J. Devack* and *Harold Somer* of counsel), for appellant.

*Steven B. Becker* for respondent.

## OPINION OF THE COURT

Per Curiam.

The defendant was licensed to operate a Carvel ice cream store in Franklin Square, Nassau County, New York, and the term of the license agreement ran to October 31, 1984. Although the plaintiff Carvel Corporation (hereinafter Carvel) declined to renew the agreement, it is undisputed that the defendant continued to operate a retail ice cream store after that date at the same location as the former Carvel store.

Carvel commenced an action seeking, among other things, a permanent injunction against the defendant pursuant to the terms of paragraph 31 of the license agreement, which provided: "To prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel trade secrets to be acquired by Licensee hereunder, it is agreed as part of the consideration to, and inducement for, Licensor entering into this agreement that in the event Licensee sells the Carvel Store or abandons the Carvel Store provided for in this License, or in the event

this license is terminated for any reason except for Licensor's breach, then for a period of three (3) years next following such event Licensee shall not directly or indirectly engage in whole or in part in the production, distribution or sale of ice cream or other frozen desserts whether as proprietor, employee, officer, director, agent, joint venturer, partner or other capacity whatsoever, within a radius of two (2) miles of the site of the within Carvel Store. The provisions of this paragraph shall survive termination, abandonment or other cancellation of this agreement".

Carvel thereafter moved for partial summary judgment on its cause of action seeking a permanent injunction, or, in the alternative, for a preliminary injunction. In opposition, the defendant argued that the restrictive covenant contained in the license agreement, by its terms, only applied in the event the license was "terminated" and, in this case, the covenant was inapplicable because the license had not "terminated" but, rather, had "expired". The defendant further argued that the agreement, and, in particular, the restrictive covenant, were unconscionable and unreasonable.

Special Term granted that branch of the motion which was for partial summary judgment, holding that an "expiration" of the agreement was but a form of "termination" and, therefore, that the covenant applied. The court also found no issue of fact precluding a determination, as a matter of law, that the restriction was reasonable and not unconscionable. We agree.

The record fails to reveal the existence of a triable issue with respect to the interpretation of the language of the license agreement which would preclude the entry of judgment as a matter of law on the plaintiff's cause of action for a permanent injunction. It is, of course, fundamental that the responsibility to interpret written instruments is one vested in the court, which must ascertain the intention of the parties from the language which they have employed (*Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291; *see also, Zodiac Enters. v American Broadcasting Cos.,* 81 AD2d 337, 339, *affd* 56 NY2d 738). Thus, it is settled that the " '[i]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument' " (*Chimart Assoc. v Paul,* 66 NY2d 570, 572-573, quoting from *Teitelbaum Holdings v Gold,* 48 NY2d 51, 56).

Moreover, "the threshold decision on whether a writing is ambiguous is the exclusive province of the court" *(Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 554; *see also, Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 156). Even in the event that an ambiguity is discerned, so as to permit reference to extrinsic evidence, the interpretation of the ambiguous language may nevertheless be determined by the court on a motion for summary judgment where the parties rely upon the written agreement and do not refer to parol evidence to shed light upon the intended meaning of their words *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., supra,* at pp 290-291; *Tantleff v Truscelli,* 110 AD2d 240, 244). The Court of Appeals has stated *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., supra,* at pp 290-291): "To defeat summary judgment the opponent must present evidentiary facts sufficient to raise a triable issue of fact, and averments merely stating conclusions, of fact or of law, are insufficient (e.g., *Ehrlich* v. *American Moninger Greenhouse,* 26 N Y 2d 255, 259; *P. D. J. Corp.* v. *Bansh Props.,* 29 A D 2d 927, affd. 23 N Y 2d 971; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 3212.05c, esp. p. 32-142.36; 6 Carmody-Wait, N. Y. Prac. [2d ed.], § 39:29). Thus, it is not enough for the opponent to show that an agreement is ambiguous permitting the introduction of parol evidence. The opponent must also disclose in evidentiary form the particular parol evidence, if any, on which it relies. *(Ehrlich* v. *American Moninger Greenhouse,* 26 N Y 2d 255, *supra; Hertz Commercial Leasing Corp.* v. *Transportation Credit Clearing House,* 64 Misc 2d 910 [App. Term], revg. 59 Misc 2d 226.) Otherwise, there are only documents to interpret, and the court may resolve ambiguities appearing in the documents on a motion for summary judgment (see *Rentways, Inc.* v. *O'Neill Milk & Cream Co.,* 308 N. Y. 342, 349; *Hertz Commercial Leasing Corp.* v. *Transportation Credit Clearing House, supra;* 4 Williston, Contracts [3d ed.], § 601; 10 N. Y. Jur., Contracts, § 190)". However, where an ambiguity in the contractual language is found to exist, and the determination of the parties' intent "depends on the credibility of extrinsic evidence * * * then such determination is to be made by the jury" *(Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172; *see also, Aronson v Riley,* 59 NY2d 770, 773; *Sutton v East Riv. Sav. Bank, supra,* at p 554; *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., supra,* at p 291).

In this case, the parties rely solely upon the written instrument and do not refer to parol evidence for the purpose of

proving what was intended by the disputed contractual language. Thus, no questions of credibility are raised, and there are no inferences to be drawn from the extrinsic evidence. It follows that the papers submitted on the motion for summary judgment did not present a triable issue of fact for a jury's determination. Rather, the motion presented an issue of law, and Special Term properly assumed the task of interpreting the pertinent language and deciding the motion *(see, State of New York v Home Indem. Co.,* 66 NY2d 669, 672; *Tantleff v Truscelli, supra,* at p 244; *cf. Aronson v Riley, supra,* at p 773).

In reviewing the interpretation given by Special Term, "the intent of the parties is to be given paramount consideration" *(Tantleff v Truscelli, supra,* at p 244; *see also, Greenwich Vil. Assoc. v Salle,* 110 AD2d 111, 114; *Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 157, *supra)* and, in searching for the parties' probable intent, the words of the contract must be accorded their " 'fair and reasonable meaning' " *(Sutton v East Riv. Sav. Bank, supra,* at p 555, quoting from *Heller v Pope,* 250 NY 132, 135).

Reviewing the license agreement, in its entirety, in light of the foregoing principles, we cannot say that Special Term erred in its conclusion that the covenant not to compete, as set forth in the agreement, was intended by the parties to apply in the event that the agreement was terminated by reason of the expiration of its term as well as by any other form of termination prior to expiration.

It is true, as the defendant notes, that the words "termination" and "expiration", or forms thereof, appear in several contexts throughout the agreement. For example, Carvel was entitled to terminate its licensee's rights under the contract in the event of a breach by the latter. Also, the contract expressly provided that in the event of "expiration, cancellation or termination", Carvel was entitled to immediate possession of its property and to prompt payment by the licensee of all open accounts. In these contexts, it might be argued that the use of the word "termination" was intended to describe an end of the agreement's existence occurring prior to the time fixed by the parties at its inception. However, another clause of the agreement provided that the licensee was to discontinue use of the Carvel name, trademarks and know-how upon "expiration or any earlier termination" of the agreement, and it can be inferred from these words that the parties understood "expiration" to be but a form of "termination". In the covenant not to compete, the stated purpose of which was to

"prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel trade secrets to be acquired", the licensee agreed to refrain from competing within the prescribed geographical area for a period of three years after the "license is terminated for any reason except for Licensor's breach" and the covenant was to survive "termination, abandonment or other cancellation" of the agreement. The foregoing language evinces an understanding by the parties that the covenant would apply in the event of any termination of their agreement (other than one brought about by Carvel's breach). The parties further understood that that language was to include the expiration of the agreement at the end of its stated term. Indeed, as noted by Special Term, Webster's New Collegiate Dictionary (1974) defines the word "expiration", in part, as a "termination". Moreover, bearing in mind that we must seek to construe the words utilized by the parties so as to effectuate their probable intent, we find, as did Special Term, that this interpretation is consistent with the purpose of the covenant and other provisions of the agreement: to protect Carvel's name, know-how and trade secrets once its relationship with its licensee had been severed. We can perceive no basis for concluding that the parties intended to provide Carvel with less protection from competition or dilution of its name in the event of expiration than in the event of some earlier termination of the license agreement.

We next consider the defendant's claim that the covenant not to compete is unconscionable and, hence, unenforceable. The doctrine of unconscionability "requires some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party' " *(Matter of State of New York v Avco Fin. Serv.,* 50 NY2d 383, 389, quoting from *Williams v Walker-Thomas Furniture Co.,* 350 F2d 445, 449). As such, the doctrine is recognized to have a procedural element involving lack of meaningful choice in the contract formation process, and a substantive element concerning the reasonableness of the terms of the contract per se *(see, State of New York v Wolowitz,* 96 AD2d 47, 67-68). The question of unconscionability is generally one of fact upon which the parties are entitled to present evidence *(State of New York v Wolowitz, supra,* at p 69): "The rule is that if it appears from the record before the court that unconscionability may exist, and the issue is not free from doubt, then the court must hold a hearing where the parties may present evidence with regard to the circum-

stances of the signing of the contract, and the disputed terms' setting, purpose and effect".

In this case, the defendant's affidavit in opposition to the motion for summary judgment alleges that the covenant not to compete is both procedurally and substantively unconscionable, because it was not subject to negotiation when the contract was made, and because it affords Carvel complete protection from competition after the agreement is ended while, at the same time, another provision of the contract permitted Carvel to license another store as close as one mile from the licensee's store and in direct competition with the licensee. These allegations are insufficient to warrant an evidentiary hearing. The defendant's claim that there was a lack of meaningful choice in the contract formation process is strictly conclusory, and the defendant fails to show that the covenant not to compete was unreasonable with respect to either geographical scope or temporal duration so as to give rise to the possibility of unconscionability *(cf. State of New York v Wolowitz, supra,* at pp 68-69). Thus, Special Term properly granted that branch of the plaintiff's motion which was for partial summary judgment and the judgment granting a permanent injunction was properly entered.

LAZER, J. P., BRACKEN, BROWN and LAWRENCE, JJ., concur.

Appeal from an order of the Supreme Court, Westchester County, dated July 29, 1985, dismissed *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

Judgment of the same court, entered August 8, 1985, affirmed.

The plaintiff is awarded one bill of costs.