**In re KAM KUO SEAFOOD CORP.,
f/k/a Aco Seafood Corp., Debtor.**

**John S. PEREIRA, As Trustee in Bankruptcy of Kam Kuo Seafood Corp.,
f/k/a Aco Seafood Corp., Plaintiff,**

v.

**HONG KONG & SHANGHAI
BANKING CORP.,
Defendant.**

**Bankruptcy No. 83 B 11836.
Adv. No. 86–5090A.**

United States Bankruptcy Court,
S.D. New York.

July 17, 1987.

---

Robert P. Herzog, New York City, for the Trustee.

Cleary, Gottlieb, Steen & Hamilton by Lawrence B. Friedman, New York City, for defendant.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

The Hong Kong & Shanghai Banking Corporation (the "Defendant" or the "bank") by summary judgment motion, seeks an order granting summary judg-

ment and dismissing the complaint filed by the trustee (the "Trustee") of Kam Kuo Seafood Corporation (the "Debtor") alleging a $150,000 preferential payment made by the Debtor to the Defendant. The Defendant contends that it is a secured creditor of Debtor and hence the $150,000 transfer did not constitute a preference under Section 547 of the Bankruptcy Code. 11 U.S.C. Section 547 (1984) ("the Code"). By cross-motion, the Trustee seeks summary judgment directing return of the payment. He asserts that the alleged Security Agreement is invalid because it makes no reference to the Debtor and therefore the transfer constitutes a voidable preference.

## I.

From the documents submitted on both motions, including the local rule 13(h) statements, it appears that the following facts are undisputed: Defendant and the Debtor had an ongoing business relationship which the record indicates dates back to 1978. William Wu ("Wu") and Edward Lee ("Lee") formerly President and Vice President of the Debtor signed an instrument titled a "Security Agreement" and dated October 2, 1978. This instrument purported to grant the Defendant a security interest in the Debtor's assets. However, the name of the Debtor does not appear anywhere on the face of the instrument. Defendant's 13(h) statement Exh. 1. Both Wu and Lee stated in their deposition testimony that they signed the instrument in their official capacities and on behalf of the Debtor. They further stated that they did not intend to create any personal obligations when they signed the instrument. Defendant's Exh. C at 20–27; Defendant's Exh. D at 15.

The Debtor's officers, on October 10, 1978, unanimously adopted a corporate resolution which authorized Wu and Lee, *inter alia,* to borrow money, pledge corporate assets and execute instruments and agreements in connection with such borrowings, on behalf of the corporation. Plaintiff's Exh. 6.

The Defendant subsequently filed two (2) standard financing statement forms in New York—one with the Secretary of State on October 24, 1978, Plaintiff's Aff.Exh. 1, and the other with the New York County Register, on June 3, 1981. Plaintiff's Aff. Exh. 3. The Defendant also filed a third such financing statement form, dated December 7, 1982, with the State of New Jersey, upon being informed that the Debtor would be moving its business operation to New Jersey. Plaintiff's Exhs. 7, 10. The financing statements were signed by Lee and the Debtor's name appears on the face of all the statements.

In a letter dated July 15, 1983, the Defendant expanded the limit of the Debtor's credit facility to $500,000. Plaintiff's Aff. Exh. 16. The Debtor ceased business operations on or about September 21, 1983. As of September 27, 1983, the Debtor owed the Defendant $454,224.78. $150,000 of this amount was transferred to the Defendants by cashier's check dated October 21, 1983. By November 1, 1983, the Debtor had paid the outstanding debt in its entirety and the Defendant terminated the Debtor's credit facilities. Plaintiff's Aff.Exh. 23.

An involuntary bankruptcy petition was filed on December 28, 1983 against the Debtor and an order for relief was subsequently entered. On January 30, 1986, the Trustee filed a complaint with this Court, pursuant to Section 547 of the Code, alleging that the $150,000 transferred to the Defendant constituted a voidable preference. The Trustee later sought, by motion, to amend his complaint to allege seven additional preferential transfers, but his motion was denied. See *Pereira v. Hong Kong & Shanghai Banking Corp (In re Kam Kuo Seafood Corp.),* 67 B.R. 304 (Bankr.S.D.N.Y.1986).

The Defendant now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 56, made applicable to these proceedings by Rule 7056 of the Rules of Bankruptcy Procedure, Bankr.R. Proc. 7056, for an order granting summary judgment in its favor. The Defendant asserts that it procured a valid and enforceable perfected security interest in the Debtor's assets and thus, the $150,000 repay-

ment did not constitute a voidable preference under Section 547. It argues that there is no genuine issue as to any material fact and it is entitled to summary judgment as a matter of law. The Trustee counters that the alleged Security Agreement is defective because it makes no reference to the Debtor. Specifically, the Trustee states that the alleged Security Agreement does not comport with the requirement of Section 9–203 of the Uniform Commercial Code ("U.C.C.") that it be signed by the debtor. N.Y.U.C.C. Section 9–203 (McKinney 1964). He also asserts that the document is clear and unambiguous on its face and, therefore, parol evidence may not be admitted to interpret the intent of the parties in entering into the agreement. Accordingly, he argues that there is no genuine issue as to any material fact and summary judgment should be entered in his favor.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R.Civ.P. 56(c). The standard for ruling on a summary judgment motion is similar to that of a directed verdict—the court must direct a verdict if under the governing law there can be but one reasonable conclusion. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986). The Supreme Court, in *Anderson v. Liberty Lobby Inc.*,

477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986), stated that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue as to any material fact." Further, the Court noted that the judge's function when ruling upon a motion for summary judgment is not to determine the truth of the allegation but to determine whether there is a genuine issue of fact. *Id.* at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. Material facts have been defined as those whose resolution will be determinative of the outcome. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 480 (1984).

■ An examination of the parties' Rule 13(h) statements, affidavits and other papers, indicates that no genuine dispute exists as to any of the facts stated therein; rather, the facts stated in their 13(h) statements and memoranda of law are essentially the same. The only dispute between the parties is whether the alleged Security Agreement is valid under the relevant statute and this is an issue of law. When the court finds that there are no material issues of fact in dispute it must decide the issue of law. *See, e.g. Shaw v. Jamaica Savings Bank (In re Cohen)*, 63 B.R. 104, 106 (Bankr.E.D.N.Y.1986).

## III.

■ Two U.C.C sections are pertinent to this discussion: N.Y.U.C.C. Sections 9–203 and 1–201(39).[1] N.Y.U.C.C. Sections 9–203, 1–201(39) (McKinney 1964). Section 9–

1. The parties appear to be ambivalent as to whether New York or New Jersey law is applicable here. Both the Trustee and the Defendant vacillate between New York's statutory and case law and that of New Jersey. The Trustee, in particular, alluded to a choice of law question in his memorandum of law, however, neither party addressed the issue formally in its papers. Apparently, their ambivalence arises from the fact that the Debtor moved the situs of its business from New York to New Jersey. However, there is no choice of law issue here. The Security Agreement clearly provides that New York law should govern its interpretation and New

York courts usually honor such provisions. *See Associate Metals and Minerals Corp. v. Sharon Steel Corp.*, 590 F.Supp. 18 (S.D.N.Y.1983), *aff'd*, 742 F.2d 1431 (2d Cir.1983). Moreover, as the facts indicate, there is a substantial relationship between the transaction and New York: The debtor is a New York corporation and the Security Agreement was executed and signed in New York. "It is settled law that the parties bona fide choice of law in a contract will be honored where the chosen state has some relation to the Agreement." *Hassett v. Revlon (In re O.P.M. Leasing Services, Inc.)*, 23 B.R. 104, 111 (Bankr.S.D.N.Y.1982).

203(1) lists three prerequisites for establishing an enforceable security interest when the collateral is not in the possession of the secured party: (1) the agreement must be signed and must contain a description of the collateral; (2) the secured party must give value; and (3) the debtor must have rights in the collateral. These requirements are in the nature of a statute of frauds, N.Y.U.C.C. 9–203, Official Comment 5 (McKinney 1964), and they serve the evidentiary function of minimizing "the possibility of future disputes as to the terms of the security agreement." N.Y.U.C.C. Section 9–203, Official Comment 3 (McKinney 1964). Section 9–203(1)(a) of the U.C.C., N.Y.U.C.C. Section 9–203(1)(a) (McKinney 1964), implicitly incorporates Section 1–201(39) which defines "signed" to include "any symbol executed or adopted by a party with present intention to authenticate a writing." N.Y.U.C.C. Section 1–201(39) (McKinney 1964).

The Trustee principally argues that the Defendant's security interest in the debtor's assets did not attach, *see* N.Y.U.C.C. Section 9–203(1) (McKinney 1964), and is not enforceable against the Debtor, because the Security Agreement was not "signed" by the Debtor within the meaning of the statute. N.Y.U.C.C. Section 1–201(39) (McKinney 1964). The Trustee asserts that while the agreement was signed by two corporate officers, the Debtor's name does not appear anywhere on the face of the Agreement, and the two corporate officers who signed the instrument did not indicate that they were signing in their official capacities. Therefore, the Trustee concludes, the instrument is flawed and unenforcable.

Relying primarily on Section 1–201(39), the Defendant asserts that the inadvertent failure to include the Debtor's name on the face of the instrument does not render the otherwise properly effectuated document, irreparably flawed. Rather, Section 1–201(39) by its language, makes the intent of the parties a central concern in determining whether the instrument was signed. Further, the Defendant argues that the Court need only examine the extrinsic evidence proffered here, the deposition testimony of Wu and Lee, in order to establish that the document was signed "with a present intent to authenticate". The Trustee, in contrast, argues that such testimony is barred by the parol evidence rule and is thus not admissible.

The parol evidence rule states, in essence, that when the parties have reduced their agreement to writing, evidence of prior or contemporaneous agreements may not be offered to contradict or vary the terms of the written contract. *Wallace Steel, Inc. v. Ingersoll–Rand Co.*, 739 F.2d 112, 115 (2d Cir.1984); 2 *Restatement (Second) of Contracts* Section 213, at 129 (1979); 3 Corbin, *Contracts* Section 573, at 357 (1960). Here, however, the extrinsic evidence is not offered to vary or contradict the terms of the written instrument. It is offered, simply to explain the intent of the parties—in accordance with Section 1–201(39) of the U.C.C. N.Y.U.C.C. Section 1–201(39) (McKinney 1964). Consequently, the task before this Court is one of contract interpretation and there is no need for the Court to engage in a discussion of the parol evidence rule.

The interpretation of a written instrument is the responsibility of the court. *Carvel Corp. v. Rait*, 117 A.D.2d 485, 488, 503 N.Y.S.2d 406, 409 (2d Dep't 1986). It is well within the purview of the court to determine whether a writing is ambiguous. *Id.* at 489, 503 N.Y.S.2d at 409. One commonly used standard of interpretation is the plain meaning rule which states that if a writing is clear and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence. J. Calamari & J. Perillo, *Contracts* Section 3–9, at 117 (1977). An ambiguous clause is one that is susceptible to two reasonable interpretations. *Diodato v. Eastchester Development Corporation*, 111 A.D.2d 303, 304, 489 N.Y.S.2d 293, 294 (2d Dep't 1985). Where the court finds as a matter of law that the language is unambiguous, extrinsic evidence regarding the intent of the parties is not admissible. *Carvel Corp. v. Rait*, 117 A.D.2d at 487, 503 N.Y.S.2d at 409; *Dannhardt v. Donnelly*, 604 F.Supp.

796, 803 (E.D.N.Y.1985). However, when some ambiguity exists, it is permissible for the court to resort to extrinsic evidence to ascertain the meaning of the contract. *See Gans v. Aetna Life Ins. Co.*, 214 N.Y. 326, 328, 108 N.E. 443, 444 (1915); 22 N.Y.Jur. 2d., *Contracts* Sections 188, 189, at 22–25 (1982).

The existence of an ambiguity can bar a summary judgment ruling; if an ambiguity exists and "determination of the parties' intent depends on the credibility of extrinsic evidence, then such determination is to be made at trial by the finder of fact." *Carvel*, 117 A.D.2d at 488, 503 N.Y.S.2d at 410 (citing *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 305 N.Y.S.2d 907, 350 N.Y.S.2d 895 (1973)). If after taking the extrinsic evidence into account, however, the meaning is so clear that reasonable men could reach only one conclusion, then the issue is one for the court. *See W.S. Hayes, Inc. v. Public Service Mutual Insurance Co.*, 12 A.D.2d 989, 990, 212 N.Y.S.2d 89, 90, *appeal dismissed,* 10 N.Y.2d 826, 221 N.Y.S.2d 718, 178 N.E.2d 424 (1961); J. Calamari & J. Perillo, *Contracts* Section 3–12, at 124 (2d ed. 1977).

■ Here, the security agreement is worded in such a fashion that it can easily be read to bind an individual as well as a corporate entity. The functions alluded to in the instrument can apparently be performed by either an individual or a corporate entity. Also, paragraph 5 of the agreement states that this agreement can bind personal representatives of the debtor. Defendant's Exh. 1 para. 5. Finally, paragraph 6 states that "[t]he words 'we' 'our' and 'us' shall be read as 'I, 'my' and 'me' respectively; *if the undersigned be a single individual* ". Defendant's Exh. 1 paragraph 6 (emphasis added). The term "single individual" appears to refer to a natural person rather than to a corporate entity. The security agreement is thus susceptible to two reasonable interpretations. Extrinsic evidence may therefore be used to aid in the interpretation of this document.

■ Nevertheless, it cannot be gainsaid that an ambiguity in a writing should be construed against the author, here the Bank. *See Restatement (Second) of Contracts*, Section 206, at 105 (1981). Hence, if an examination of the extrinsic evidence does not clarify the ambiguity, the instrument must then be construed against the Defendant.

That, however, is not the case here. The depositions show that both Wu and Lee testified that their intent was to bind the corporation and not themselves. The deposition testimony of Wu and Lee is uncontested by the Trustee and the papers submitted by the parties do not raise any issue regarding the credibility of their testimony. There is only one result that can be reached upon an examination of the instrument in light of the extrinsic deposition evidence, and that is that the Debtor's officers signed the instrument in their official capacities, with a present intent to authenticate. Therefore, the signing comports with Section 1–201(39) of the U.C.C. N.Y. U.C.C. Section 1–201(39).

## IV.

■ The Trustee argues that extrinsic evidence does not cure a defective instrument; the fact still remains, he argues, that the instrument makes no reference to the Debtor and thus does not comport with the formal requirements of Section 9–203(1) of the U.C.C. N.Y.U.C.C. Section 9–203(1) (McKinney 1964).

There appears to be no case authority directly analogous to the case at bar. Nevertheless, courts have on occasion dealt with comparable situations. Two analytical approaches have emerged from among the various jurisdictions to deal with a defectively constructed security agreement. One approach involves looking not only at the Security Agreement but at all of the documents executed in the transaction, *in toto*, to determine whether they evidence an intent on the part of the debtor to grant a security interest in collateral. *See, e.g. Connecticut Bank & Trust Co. v. Kennedy (In Re Modern Engineering & Tool Co.)*, 25 U.C.C.Rep.Serv. (Callaghan) 580, 585–86 (Bankr.D.Conn.1978); *In Re Excel Stores, Inc.*, 1 U.C.C.Rep.Serv. (Cal-

laghan) 616, 618 (Bankr.D.Conn.1963). Moreover, in some of these cases, there is no one instrument, entitled a "Security Agreement"; nevertheless, courts have found a security interest, based on the presence of language memorializing the requisite intent. *See, e.g., Valmont Equipment Co. v. Great Basin Transport (In re Great Basin Inc.)*, 32 B.R. 365, 367–68 (Bankr.W.D.Okla.1983); *Sage v. City of Mount Vernon (In Re Trucker's International, Inc.,)* 17 U.C.C.Rep.Serv. (Callaghan) 1337, 1341 (Bankr.W.D.Wash. 1975).

Other Courts have adopted a more strict approach and look only at the face of the instrument. *See, e.g., In re Rex Printing*, 14 B.R. 403, 404–05 (Bankr.N.D.Ind.1981); *First County National Bank & Trust Co. v. Canna*, 124 N.J.Super. 154, 155, 305 A.2d 442, 443 (App.Div.1973); *In re Maple Contractors*, 172 N.J.Super. 348, 353, 411 A.2d 1186, 1191 (Law Div.Essex Cty.1979); *M. Rutkin Electric Supply Co. v. Burdette Electric Inc.*, 98 N.J.Super. 378, 382, 237 A.2d 500, 504 (Chan.Div.1967);

However, the common thread which binds all these latter cases together, the absence of a formally constructed signed document entitled a "Security Agreement", is also the characteristic which distinguishes them from the case at bar. In this case there is such a signed document. The fundamental question raised by the facts of this case is whether the Debtor referred to in the Security Agreement is actually the Debtor corporation or the individual corporate officers who signed the instrument. In light of the long history of business activity between the Debtor and the Defendant, it would be illogical and unreasonable for this Court to conclude that in this one instance the Defendant bank conducted negotiations with Wu and Lee, the two officers of the corporation who dealt with the bank consistently since 1978, only in their individual capacities as the Trustee suggests. Such a mechanical application of this statute in the face of compelling, uncontroverted, admissible extrinsic evidence is unwarranted. *See* N.Y.U.C.C. Section 1–102(1) (McKinney 1964).

V.

■ Having determined the existence of a valid security agreement we now turn to the Trustee's assertion that the defendant did not perfect a security interest in two forms of collateral, namely farm products and fixtures, and that the variance in descriptions of collateral precludes perfection. The Trustee argues that the bank's New Jersey filing, to perfect a secured interest in "farm products" and "fixtures", is defective because, in order to secure an interest in such collateral the Defendant must also file a financing statement with the recorder in the County of the Debtor's residence, in this case Hudson County. *See* N.J.Stat. Ann. Section 12A:9–401(1). The Defendant only filed with the Secretary of State. But Section 12A:9–401(2) states that perfection is effectuated to the extent that the filing complies with the filing requirements. N.J.Stat.Ann. Section 12A:9–401(2) (1962). Thus, the filing with the Secretary of State perfected a security interest in the Debtor's bank accounts—the source of the disputed transfer—but not in its "farm products" and "fixtures." Since farm products and fixtures are not at issue in this case, this argument is irrelevant.

■ The Trustee's other argument, that the description of collateral in the Security Agreement and in the financing statements materially varies, is also meritless. The filing of the financing statement serves a notice function and need only state types of collateral. It is the responsibility of the person conducting the search to find the Security Agreement and discover which collateral is actually pledged. *See* 8 Anderson, *Uniform Commercial Code* Section 9–110:6 (3d ed. 1985).

The evidence offered by the parties does not raise a triable issue of fact under the standards established by the Supreme Court in *Anderson* and *Celotex* and neither does the extrinsic evidence presented. Thus, this case is ripe for summary judgment. The facts before us would undoubtedly lead the trier of fact to find that the Debtor did execute a valid security agreement which granted the Defendant a secur-

ity interest in the Debtor's assets. For the foregoing reasons, the Defendant's motion for summary judgment dismissing the claim is hereby granted and the Trustee's motion for a summary judgment in his favor is denied. Judgment is to be entered in favor of the Defendant dismissing the complaint. Settle Judgment.

It is SO ORDERED.