■ CARVEL CORPORATION, Appellant-Respondent, v PETER PIACENTE, III, Respondent-Appellant.—Order of the Supreme Court, Westchester County (Sondra Miller, J.), entered on or about May 23, 1989, which, *inter alia,* denied the motion of plaintiff Carvel Corporation for summary judgment on its twelfth cause of action seeking a permanent injunction enforcing a restrictive covenant contained in the parties' licensing agreement, is unanimously modified, on the law and facts and in the exercise of discretion, to the extent of granting plaintiff summary judgment on its twelfth cause of action and granting an injunction barring defendant's operation of an ice cream store within two miles of the subject location through June 24, 1991, and otherwise affirmed, without costs or disbursements.

On March 11, 1987, plaintiff Carvel and defendant Piacente entered into a Carvel retail manufacturer's license agreement under which defendant was granted a license to manufacture and sell Carvel products at a store located at 361 Sutter

Avenue in Brooklyn. Thereunder, in return for the right to use the Carvel name, defendant licensee was required to utilize and sell only Carvel or Carvel-approved ice cream mix, on penalty of immediate termination of the license. Carvel was entitled to make periodic inspections of the store, its stock of ice cream supplies and its books and records, in order to insure compliance with these provisions. Paragraph THIRTY-FIRST of the license agreement contained the restrictive covenant disputed in this appeal: "To prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel trade secrets to be acquired by Licensee hereunder, it is agreed as part of the consideration to, and inducement for, Licensor entering into this Agreement, that in the event Licensee sells the Carvel Store or abandons the Carvel Store provided for in this Agreement, or in the event this Agreement expires, or is terminated for any reason except for Licensor's breach, then for a period of three (3) years next following such event Licensee shall not directly or indirectly engage in whole or in part in the production, distribution or sale of ice cream or other frozen desserts whether as a proprietor, employee, officer, director, agent, joint venturer, partner or other capacity whatsoever, at the location of the within Carvel Store, or, within a radius of two (2) miles of the site of the within Carvel Store. The provisions of this paragraph shall survive expiration, termination, abandonment or other cancellation of this Agreement."

On June 24, 1988, Carvel terminated defendant's license for "purchase and use of non-Carvel approved ice cream mix or purchase from non-Carvel sources of supply, your failure to pay monies due Carvel and your failure to permit inspections of your store by Carvel personnel". Carvel commenced this action in July 1988 as defendant nonetheless continued to utilize the Carvel trademark. This practice apparently ended during the pendency of this action, with defendant returning all Carvel machinery and equipment. However, defendant continued to operate an ice cream store out of the same location, an alleged breach of paragraph THIRTY-FIRST.

By decision-order dated May 22, 1989, the IAS court, *inter alia,* denied an injunction based upon the restrictive covenant.

The most significant issue on plaintiff's appeal is Carvel's right to a permanent injunction barring defendant from operating an ice cream store at the present location or within two miles thereof, which at this late date would last only about one year, until the third anniversary of the termination, June 24, 1991. It is understandable that the court below was reluc-

tant to disrupt defendant's livelihood to that extent. There is, however, no basis to deny plaintiff this relief. Defendant has never denied utilizing non-Carvel-approved products. He does not contend the restrictive covenant is unreasonable in terms of geographical scope or temporal duration, and other courts have found in plaintiff's favor in that regard (*Carvel Corp. v Rait*, 117 AD2d 485; *Carvel Corp. v Irvolino*, 121 AD2d 424).

Nothing in defendant's opposition raises the slightest justification for, or causal connection between, his commission of the cardinal franchise sin of using non-Carvel-approved products under the Carvel logo and any conduct by Carvel. The only element of the opposition remotely approaching such a justification or causal link would be the excuse that Carvel failed to supply him with sufficient amounts of products, forcing him to use non-Carvel products to meet demand and expenses. However, in this respect the opposition was conclusory and evasive, as it, in fact, concerned problems with deliveries at the store. Defendant never denied sufficient Carvel products were always available at the Carvel Yonkers warehouse, convenient to him.

The other elements of the opposition—false financial projections, inadequate technical support, absence of rabbinical approval, delay in staging a grand opening and in supplying a Coca Cola soda fountain, and disputes about credits for returned items—offer no justification for, or causal link to, defendant's use and sale of non-Carvel ice cream as Carvel products. Thus, these factual "issues" are immaterial.

Defendant's fraud allegations are no more than breach of contract allegations in disguise—that plaintiff did not intend to perform at the time the agreement was signed—and thus insufficient. Further, while defendant clearly knew of the alleged falsity of Carvel's representations by the summer of 1986, he did nothing to restore the parties to the status quo ante until after this action was brought against him, by which time he had virtually nothing to give back to Carvel. It should also be noted that with respect to defendant's claims of false financial projections and assurances of success, these were expressly disclaimed by Carvel at the time the contract was entered into, rendering these grounds insufficient. Concur—Murphy, P. J., Carro, Milonas, Asch and Kassal, JJ.