956 F.2d 1174
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
LOCKHEED AIRCRAFT SERVICE COMPANY, Appellant,
v.
Donald B. RICE, Secretary, Department of the Air Force, Appellee.
 No. 91-1202.
 United States Court of Appeals, Federal Circuit.
 Feb. 20, 1992.
 
 Before ARCHER, RICH and CLEVENGER, Circuit Judges.
 DECISION
 ARCHER, Circuit Judge.
 
 
 1
 Lockheed Aircraft Service Company (Lockheed) appeals the decision of the Armed Services Board of Contract Appeals (Board) denying its claim for costs incurred for leased aircraft used to perform a cost reimbursement contract with the Air Force. Lockheed Aircraft Serv. Co., ASBCA No. 33920 (Oct. 31, 1990). Lockheed seeks to recover lease payments for the aircraft for periods after the full contract term and costs of putting the aircraft in condition to return to the lessor. We affirm.
 
 OPINION
 
 2
 The issue here is whether the board correctly interpreted the provisions of Appendix A of Lockheed's contract with the Air Force.
 
 
 3
 This court reviews de novo the interpretation of a contract which is a question of law. George Hyman Constr. Co. v. United States, 832 F.2d 574, 579 (Fed.Cir.1987); B.D. Click Co. v. United States, 614 F.2d 748, 752 (Ct.Cl.1980). Nevertheless, the Board's determination is accorded careful consideration because the legal interpretation of a contract by a tribunal having expertise is helpful even if not controlling. Fruin-Colnon Corp. v. United States, 912 F.2d 1426, 1429 (Fed.Cir.1990); Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1564 (Fed.Cir.1987). When interpreting contract terms, we give them their ordinary and commonly accepted meaning unless the parties' contrary intent is shown. See American Science & Engineering Inc. v. United States, 663 F.2d 82, 88 (Ct.Cl.1981); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 976 (Ct.Cl.1965).
 
 The Board found that:
 
 4
 The meaning of the words termination and expiration as used in Appendix A are central to this dispute. There is no evidence that the parties agreed to or even discussed the words termination and expiration when Appendix A was added to the contract.
 
 Article 3(c) of Appendix A states that:
 
 5
 In the event of a termination pursuant to [Article 3(a) ] ... the contractor at its option may sublease the Aircraft, assign the lease to a third party, terminate the lease or otherwise dispose of the Aircraft and all costs reasonably incurred by the contractor in consummating such subleasing, assignment, termination or disposal ... shall be reimbursable to the contractor as costs incurred under this contract.
 
 
 6
 (Emphasis added.)
 
 
 7
 In Article 3(a), the words "expiration" and "termination" are both used:
 
 
 8
 In the event of termination for any reason of all or part of the work under this contract or upon the expiration of this contract, the Government shall have the right to request assignment of the Lease....
 
 
 9
 The Board gave the relevant terms their common meaning, and determined that a "termination" is "an ending prior to the full contract term as distinct from an expiration of the contract at the contract term."
 
 
 10
 The Board recognized that the words termination and expiration may sometimes be used interchangeably to indicate the end of a full contract term. However, it noted that termination usually means an action taken to end the contract before the end of its anticipated term, citing Black's Law Dictionary, Fifth Edition (1979). Further, the Board pointed to the fact that termination has this meaning in the standard government contract clauses covering termination for default or termination for the convenience of the government. Finally, the Board compared the use of termination in Article 3(c) with other provisions of the contract, such as Articles 3(a) and 5. These sections use both termination and expiration. The Board determined that the terms should be construed as having distinct meanings, otherwise one would be superfluous and unnecessary. Based on this analysis, the Board concluded that Article 3(c) covers only a termination, and does not allow recovery of lease disposition costs where, as in this case, the contract has run its full term.
 
 
 11
 We discern no error in the Board's interpretation of the provisions of Appendix A. The Board interpreted the word "termination" in accordance with its plain and customary usage in government contracts and that interpretation gives meaning to, and is consistent with, other language contained in Appendix A. Lockheed's interpretation on the other hand is strained and disregards the provisions of Articles 3(a) and 5. There, the words expiration and termination are both used in a way to indicate they have different meanings.
 
 
 12
 We have considered Lockheed's other arguments, including contract ambiguity and contra proferentum, and do not find them persuasive. Lockheed's claim to "return condition" costs, as opposed to continuing lease payments, is also based on Article 3(c), which as indicated permits reimbursement only in the event of termination.