OPINION OF THE COURT
Memorandum.
On the court’s own motion, the decision and order of this court entered January 29, 2004 in the above-entitled action is recalled and vacated and the following decision and the order hereon is substituted therefor.
Order affirmed without costs.
Defendants’ evidence raised sufficient doubt as to the conscionability of the process by which the finance lease agreement was negotiated to merit a trial, inter alia, of the nature of the representative’s negotiating practices with defendant, who is not a native speaker of English. While we recognize the general rule that finance leases such as the one herein at issue are enforceable (e.g. Preferred Capital v PBK, Inc., 309 AD2d 1168 [2003]; Canon Fin. Servs. v Medico Stationery Serv., 300 AD2d 66 [2002]; Preferred Capital v Harvey B., Inc., 2 Misc 3d 131 [A], 2004 NY Slip Op 50115[U] [2004]), we are nevertheless persuaded that the instant facts raise a question as to the propriety of the contract negotiation process (Carvel Corp. v Rait, 117 AD2d 485, 490 [1986] [“The question of unconscionability is generally one of fact upon which the parties are entitled to present evidence”]; State of New York v Wolowitz, 96 AD2d 47, 67 [1983] [procedural unconscionability addresses “high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties”]). Although UCC 2-A-108 (2) limits the procedural unconscionability remedy provided therein to consumer finance leases, thereby purporting to render the remedy of procedural unconscionability inapplicable to a commercial finance lease such as is involved herein (cf. UCC 2-A-108 [1]), the Comment to said section makes clear that “[t]he remedies of this section are in addition to remedies otherwise available for the same conduct under other law” *119 (UCC 2-A-108, Comment; see generally Universal Leasing Servs. v Flushing Hae Kwan Rest., 169 AD2d 829 [1991]; Carvel Corp. v Rait, 117 AD2d 485 [1986], supra; State of New York v Wolowitz, 96 AD2d 47 [1983], supra).
We are as mindful as our dissenting colleague of the rule that persons insufficiently proficient in the English language must prove reasonable efforts to have a document read and explained (Kassab v Marco Shoes, 282 AD2d 316 [2001]; Shklovskiy v Khan, 273 AD2d 371, 372 [2000]), or account for why this was not done (Kenol v Nelson, 181 AD2d 863, 866 [1992]; Sofio v Hughes, 162 AD2d 518, 519 [1990]), if they would avoid the presumption of knowledge of the contents of an executed instrument (British W. Indies Guar. Trust Co. v Banque Internationale A Luxembourg, 172 AD2d 234 [1991]), and its correlate which binds a contract’s signor whether or not the contract was read or understood (Maines Paper & Food Serv. v Adel, 256 AD2d 760, 761 [1998]). Nevertheless, viewing defendant’s allegations of fact in the light most favorable to her, as we must (e.g. Wenger v Goodell, 220 AD2d 937, 938 [1995]), we are persuaded that defendant’s opposition papers raised triable questions of material fact as to the propriety of the contract negotiation process, particularly in light of defendant’s alleged lack of competence in English and the complexities of the contract which included the absence of remedies in the event the consideration therefor failed and the waiver of defenses in the event of a breach (see Universal Leasing Servs. v Flushing Hae Kwan Rest., 169 AD2d 829, 831 [1991]; Advanta Bus. Servs. Corp. v Five C’s Hardware & Paint Store, 256 AD2d 369, 370-371 [1998]; Commercial Lease Funding Corp. v Lenny’s Little New Yorker, 204 AD2d 1080 [1994]; Davidovits v De Jesus Realty Corp., 100 AD2d 924, 925 [1984]).