OPINION OF THE COURT
Per Curiam.
Order entered September 28, 2000, insofar as appealed from, reversed, without costs, and matter remitted to Civil Court for an evidentiary hearing on defendants’ motion to disqualify the *43 firm of Allyn & Fortuna from further representation of the plaintiff.
Order entered November 1, 2001 modified to deny plaintiffs motion for summary judgment on the complaint in the main action, and, as modified, order affirmed, with $10 costs to defendants-appellants.
Order entered March 27, 2002 reversed, with $10 costs, and motion of third-party defendant for summary judgment dismissing the third-party complaint is denied.
Appeal from judgment entered August 12, 2002 dismissed, without costs, as academic in light of our determination on the appeal from the order of November 1, 2001.
The main and third-party actions giving rise to this appeal stem from a commercial leasehold involving restaurant premises located at 249 East 49th Street, in Manhattan. In the main action, plaintiff landlord K&S of New York Corp. seeks to recover rent and attorney’s fees allegedly due pursuant to an undated written lease agreement executed by defendant tenant Sushi of Nao International, Inc. and guaranteed by the corporate tenant’s principals, individual defendants Akim oto and Yasuda. The third-party action seeks damages against the principal (Sato) of the corporate plaintiff upon allegations of fraud in the inducement and against the law firm of Allyn & Fortuna (A&F), which prepared the disputed lease agreement and accompanying guaranty, upon theories of legal malpractice and breach of fiduciary duty.
The record developed in connection with the parties’ extensive motion practice below shows that, at the time of the lease execution in November 1998, defendants Akimoto and Yasuda were employed, respectively, as maitre’d and chef at a Japanese restaurant owned and operated by Sato. Determined to open their own restaurant, defendants agreed to rent vacant ground-floor space at the subject East 49th Street premises, a building owned by Sato, and undisputedly were given assurances by Sato that he would provide some form of financial backing for the new business enterprise. In this regard, defendants allege that Sato agreed to enter into a joint venture/partnership arrangement with the two individual defendants, in which each of the three participants was to contribute $100,000 toward renovation and other start-up costs related to the inchoate business. In contrast, Sato maintains that he merely agreed to provide a $100,000 guaranty on any institutional loan applied for by defendants.
*44 It is undisputed that in or about September of 1998 Sato, through his business manager, contacted the corporate landlord’s long-time counsel, third-party defendant A&F, and requested that the law firm take steps to incorporate the new restaurant business and to draft a lease agreement for the new restaurant space. The lease prepared by A&F and ultimately signed (without any changes) by the individual defendants on behalf of the corporate tenant contains several unusual, if not disquieting, elements, the most notable of which are provisions designating a purported 10-year term to run from October 1998 (prior to the time that the lease was actually drafted or presented for signature) through December 2001, and authorizing the (plaintiff) landlord to terminate the tenancy “at his [sic] sole option . . . anytime upon 60 days’ notice,” and to retain “[a]ll fixtures, inventory, all furniture and any property used in operation of the restaurant” upon its exercise of the unilateral, virtually unlimited cancellation option. While A&F denies that it represented any of the defendants during the lease transaction, it is agreed that for the services it provided in connection with the preparation and execution of the lease A&F issued at least two billing statements which were addressed to the corporate defendant and which bore the notation “In Reference To: Sushi of Nao, Inc. Professional Services” and, further, that the corporate defendant made at least partial payment on the invoices.
The creation of the contemplated restaurant business ultimately foundered, however, for reasons which are vigorously disputed by the parties. In this connection, Sato claims that the individual defendants backed out of the deal based upon various financial and other concerns and that he (Sato) was at all times prepared to fulfill his pledge to guarantee a loan on behalf of the defendants. For their part, defendants assert that Sato, when informed of unanticipatedly high renovation costs, reneged on his promise to invest, as partner or joint venturer, in the new business.
In the ensuing litigation, following the denial of defendants’ motion to disqualify A&F as plaintiffs counsel, summary judgment was awarded both to the plaintiff landlord on its complaint in the main action and to third-party defendants Sato and A&F dismissing the third-party action. Defendants third-party plaintiffs now appeal, and we reverse.
With respect to A&F’s involvement in the lease transaction, we conclude that there are unresolved issues of fact with *45 respect to the law firm’s alleged dual representation and conflict of interest which warrant a hearing on defendants’ disqualification motion and which preclude the summary dismissal of the third-party action as against A&F (see Swift v Ki Young Choe, 242 AD2d 188 [1998]). Based upon the parties’ conflicting submissions, and considering that the corporate defendant paid a fee to A&F in response to the latter’s invoices specifically referencing the lease transaction, there is at least a triable issue as to whether the parties’ “words and actions” were sufficient to create an attorney-client relationship (Talansky v Schulman, 2 AD3d 355, 358 [2003]; see also Tabner v Drake, 9 AD3d 606, 609 [2004]).* On this record, “there exist[ ] sufficient aspects of such relationship to trigger inquiry into the potential conflict arising from [A&F’s] role herein” (Wall St. Assoc. v Brodsky, 227 AD2d 301, 302 [1996]) and to warrant an evidentiary hearing prior to a final determination on the motion for disqualification (see Poli v Gara, 117 AD2d 786 [1986]).
Nor did plaintiff establish its entitlement to judgment as a matter of law regarding the defendants’ claim that the lease agreement was unconscionable, thus requiring denial of plaintiffs motion for summary judgment in the main action. In the particular circumstances here present, and in view of the as yet uncertain nature of A&F’s role in the lease formation process, the apparent disparity in the business acumen of plaintiff and the individual defendants (who are not native speakers of English), and the fact that the lease agreement entered into contained a sweeping cancellation clause giving plaintiff (landlord) the unfettered right to cancel the valuable commercial leasehold at any time without cause upon minimal notice and thereby retain possession of the restaurant’s fixtures, furniture, and business inventory, it cannot be said as a matter of law that the lease agreement was neither procedurally nor substantively unconscionable (see Currie v Three Guys Pizzeria, 207 AD2d 578 [1994]; Universal Leasing Servs. v Flushing Hae Kwan Rest., 169 AD2d 829 [1991]; Advanta Bus. Servs. Corp. v Colon, 4 Misc 3d 117 [2004]).
Finally, inasmuch as a creditor “cannot recover from a guarantor where the creditor has practiced any fraud to induce the guarantor to assume the obligation of guarantee” (General *46 Motors Acceptance Corp. v Kalkstein, 101 AD2d 102, 105 [1984], appeal dismissed 63 NY2d 676 [1984]), and as the general merger clause contained in the guaranty was ineffective to bar extrinsic evidence of a fraudulent misrepresentation (see Sabo v Delman, 3 NY2d 155, 161 [1957]; Allomare v Balnir, Inc., 309 AD2d 683, 684 [2003]), the individual defendants’ fraud in the inducement claims should not have been summarily dismissed.
Suarez, EJ., McCooe and Gangel-Jacob, JJ., concur.

 It is noted that although Justices Kern and Kenney found that they were bound by the “law of the case” based upon the initial order on the disqualification motion addressing this point, we are not similarly bound (see Grullon v City of New York, 297 AD2d 261, 265 [2002]).