NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0649n.06

Case No. 13-4101

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 19, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AVIS RENT-A-CAR SYSTEM, INCORPORATED; BUDGET RENT A CAR SYSTEMS, INC.; ENTERPRISE RAC COMPANY OF CINCINNATI, LLC, dba Enterprise Rent-A-Car; VANGUARD CAR RENTAL USA, LLC, dba National and Alamo, | ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF DAYTON, OHIO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: COLE, Chief Judge; COOK and WHITE, Circuit Judges.

COOK, Circuit Judge. This case involves a contract dispute between the City of Dayton, Ohio (the "City") and rent-a-car companies Avis, Budget, Enterprise, and Vanguard (collectively, the "RACs") concerning their operations at the Dayton International Airport ("Airport"). The RACs contend that the City breached the Rental Car Ready/Return Agreement ("RRA") under which the City leased the entire first floor of a newly-constructed parking garage at the Airport to the RACs rent-free for a twenty-year term. Specifically, according to the RACs, the City attempted to unilaterally implement a permit system that reduced the space available to

the RACs and charged additional rent before the twenty-year term expired. In the district court, the City responded that the RRA automatically terminated when the Concession Agreement, the RACs' general operating agreement with the Airport, expired on December 31, 2012. Granting summary judgment to the RACs, the district court rejected this interpretation because it (1) renders the twenty-year lease provision meaningless, and (2) conflates the terms "expiration" and "termination" despite the agreements' distinct uses of those terms. We affirm.

I.

In 2006, the various RACs and the City entered into materially identical Concession Agreements that "set forth the terms and conditions for the non-exclusive right and privilege to operate an on-Airport rental car concession." The City generated significant revenue from the RACs' concessions in the form of rent, fees, and the collection of a Customer Facility Charge ("CFC") from RAC customers. Though the Concession Agreement initially contemplated a three-year term, the City and RACs later amended it to "expir[e] December 31, 2012 . . . , unless terminated earlier in accordance with the provisions of this Agreement."

In May 2008, the City and the RACs signed a Memorandum of Understanding ("MOU") that expressed the City's intent to construct a three-story Airport parking garage using CFC revenue. It also memorialized the parties' agreement to relocate the Ready/Return area—where RAC customers pick up and return rental cars and the RACs store unused vehicles—from a surface parking lot to the ground floor of the garage. That MOU provided that the "City and each RAC will enter into a lease agreement for the ground level of the garage with a term of 20 years, during which time the RACs will not owe any space rent or ground rent." Last, "[t]he parties agree[d] to negotiate, in good faith, such additional agreements and amendments as are necessary for the Garage project, including . . . amendment(s) to the Concession Agreement."

The RACs and the City then signed materially identical RRAs in anticipation of the completion of the parking garage. Most important for the purposes of this case, the RRA provided the following under "<u>Article V – Term</u>": "This Agreement shall expire twenty (20) years from the Garage Completion Date . . . . In addition, this Agreement shall automatically terminate upon the date of termination of the Concession Agreement." In terms of substance, the parties "agreed that the ground floor of the Parking Garage . . . shall be allocated to the RACs for Ready/Return" rent-free "[i]n consideration of the use of CFCs to fund construction of the Parking Garage . . . and payment of [operation and maintenance services for the garage]."

The present dispute arose in 2012 when the City's new Director of Aviation asked the City's legal counsel "to look for ways for [the City] . . . to be able to get out of" the RRA because he "believed that it was a bad deal for the City." Ignoring the RACs' repeated requests to negotiate an extension of the Concession Agreement, the City instead issued a memorandum declaring that "[t]he [Concession Agreements] expire on December 31, 2012[,] and accordingly the [RRAs] automatically terminate." The City proposed a drastically different permit system that eliminated over half of the parking spaces leased to the RACs under the RRA and charged significant per-space rent.

After the City enacted ordinances to implement this permit process and advised the RACs that they must file a permit interest form to continue operating at the Airport, the RACs filed two consolidated suits alleging breach of contract under Ohio law.[1] On cross-motions for summary judgment, the district court granted judgment to the RACs, concluding that the RRA and Concession Agreement use the terms "expiration" and "termination" distinctly, and therefore

---

[1]The agreements at issue all provide that they "shall be governed by and construed in accordance with the laws of the State of Ohio."

"the December 31, 2012, expiration date of the Concession Agreement had no effect on the twenty-year lease term of the [RRA], other than to provide the City with a manufactured justification for implementing the permit process." The City appeals.

II.

We review the grant of summary judgment de novo, *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). Drawing all reasonable inferences in the light most favorable to the City, we will affirm if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also* Fed. R. Civ. P. 56(a). "Questions of contract interpretation are generally considered questions of law subject to de novo review." *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 990 (6th Cir. 2007).

*A. The City's Novation Argument*

Initially, the City argues that prefatory language in an amendment to the Concession Agreement constitutes a novation that supersedes the RRA's twenty-year term. That language provides that the "City agrees that the Premises as depicted on Exhibit C shall be provided to [the RACs] at no additional cost for the term of the [Concession] Agreement."

Yet, as the RACs point out, the City forfeited this argument by failing to raise it below. Indeed, the City never mentioned this amendment in its briefing to the district court. "This court will exercise its discretion to entertain issues not raised before the district court only in exceptional cases or when application of the [forfeiture] rule would produce a plain miscarriage of justice." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, --- F.3d ---, 2014 WL 2959066, at *4 (6th Cir. 2014) (internal quotation marks and alterations omitted); *see also Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 396 n.3 (6th Cir. 1999) ("In order to preserve the

integrity of the appellate structure, we should not be considered a 'second shot' forum . . . where secondary, back-up theories may be minted for the first time."). This case presents a routine contract dispute, and no miscarriage of justice will result from holding the City to freely-negotiated and agreed-upon contract terms, even if it now regrets the deal that it struck.

The City responds that we should nevertheless consider this argument because it involves only a question of law requiring no additional factual determinations. *See In re Morris*, 260 F.3d 654, 664 (6th Cir. 2001) ("[W]e should address an [unpreserved] issue presented with sufficient clarity and requiring no factual development if doing so would promote the finality of litigation." (emphasis removed)). Here, though, the resolution of this issue may require further factual development because the RACs offer a reasonable alternative interpretation:

> When the . . . [a]mendment states that 'the Premises as depicted on Exhibit C shall be provided . . . for the term of the [Concession] Agreement,' it means that the RACs' respective allocation of ready/return spaces in the Garage 'as depicted on Exhibit C' (not their right to lease space on the first floor of the Garage) would be in effect for the term of the Concession Agreement.

(emphasis removed). This alternate interpretation renders the cited language ambiguous at a minimum,[2] and thus this issue falls outside the argument-forfeiture exception identified in *Morris*. *See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008) ("If a contract contains ambiguities, it generally becomes the task of the fact-finder to use extrinsic evidence to determine the intent of the parties.").

B. *The Effect of the Concession Agreement's Expiration on the RRA*

Alternatively, the City falls back on the argument it presented to the district court: the Concession Agreement's expiration on December 31, 2012, "automatically terminate[d]" the

---

[2]The RACs maintain that their interpretation constitutes the only reasonable reading of the amendment as a matter of Ohio contract law. Due to the City's failure to preserve this argument, however, we need not decide this issue.

RRA. The City relies on the final sentence of the RRA's "Term" provision: "In addition, this Agreement shall automatically terminate upon the date of termination of the Concession Agreement." As ably explained by the district court and the RACs, however, this argument fails to persuade for two reasons.

First, the City's interpretation would render the RRA's express twenty-year term meaningless. "The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Karabin v. State Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406 (Ohio 1984); *see also Quill v. R.A. Inv. Corp.*, 707 N.E.2d 35, 40 (Ohio Ct. App. 1997) (rejecting contract interpretation that would render the provision at issue a "nullity"). Because the City's interpretation contravenes these well-established contract principles, the district court properly rejected it as unreasonable.

Second, the City's interpretation erroneously conflates the terms "termination" and "expiration" despite clear textual indicators that the parties intended these terms to have distinct meanings. Read in context, "expiration" refers to the prescribed end of a defined period of time, and "termination" refers to the premature end of such a period. Thus, the Concession Agreement provides that "[t]his Agreement is effective for a period of six (6) years . . . beginning January 1, 2007 . . . and *expiring* December 31, 2012 . . . , unless *terminated earlier* in accordance with the provisions of this Agreement." (emphasis added). Similarly, another clause provides that "[i]f an Event of Default occurs . . . after the *expiration* of the applicable . . . cure period . . . , the City . . . may *terminate* this Agreement." (emphasis added).

Other provisions likewise distinguish the terms. For example, the RRA requires that, "[u]pon termination *or* expiration of this Agreement, *whichever date is earlier*, [the RACs] shall

return the Premises." (emphasis added). If "[t]he parties intended the terms . . . to be synonymous," as the City insists, the RRA would not need to list both as possible conditions precedent to the return of the leased premises. And as the district court explained, the RRA's use of the phrase "automatically terminate" in the event of the Concession Agreement's termination bolsters this interpretation:

> Th[e] use of the adverb "automatically" emphasizes the intransitive form of "terminate," while also highlighting the fact that the parties chose not to use the synonymous intransitive verb "expire." In other words, the choice of language suggests that the parties specifically chose not to conflate the terms, and that they intended at all times to distinguish termination by a party to the agreement from expiration according to its negotiated term.

Because the Concession Agreement *expired*, as opposed to *terminated*, on December 31, 2012, the RRA did not simultaneously terminate.

Case law supports our conclusion. "When interpreting a contract, we will presume that words are used for a specific purpose." *Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008). Regarding these particular terms, courts recognize that though "the words termination and expiration may sometimes be used interchangeably [for] the end of a full contract term[,] . . . termination usually means an action taken to end the contract before the end of its anticipated term." *Lockheed Aircraft Serv. Co. v. Rice*, 956 F.2d 1174, 1992 WL 29143, at *1 (Fed. Cir. 1992) (table); *see also Perfection Oil Co. v. Saam*, 264 F.2d 835, 838 (8th Cir. 1959) ("[T]he word 'termination' . . . should be interpreted to mean the cancellation of a contract before the expiration of the term provided for in the contract, and . . . 'termination' and 'expiration' are not synonymous words.").

In response, the City cites cases where the court found "termination" to encompass "expiration." *See, e.g.*, *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 401 (D.

Md. 2007); *Carvel Corp. v. Rait*, 117 A.D.2d 485, 489 (N.Y. App. Div. 1986). But as the RACs note, these cases falter here. For example, in *NaturaLawn*, the contract provided that a "non-compete clause would apply after termination '*for any reason.*'" 484 F. Supp. 2d at 401. In holding that the contract's expiration triggered this clause, the court reasoned that "'expiration' is one reason for the 'termination' of an agreement." *Id.* The parties included no such broad language here. In *Carvel*, the court focused on the agreement's "stated purpose" of protecting trade secrets after a licensing agreement ended. *Carvel*, 117 A.D.2d at 489–90. Here, no overarching purpose supports the City's preferred interpretation other than buyer's remorse. All indicators of meaning in these agreements lead to the conclusion that the parties purposefully distinguished an agreement's expiration from its termination. *See Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) ("[T]he meaning of any particular . . . contract is to be determined on a case-by-case and contract-by-contract basis, pursuant to the usual rules for interpreting written instruments.").

## III.

For these reasons, we AFFIRM.